# CAMPBELL v. NEWMAN.

No. 4606. Opinion Filed June 29, 1915.

On Rehearing, September 14, 1915.

(151 Pac. 602.)

1. **DEEDS—Reformation of Instruments—Rescission—Grounds—Mistake of Law.** A mere mistake of law, not accompanied by other circumstances demanding equitable relief, constitutes no ground for rescission, cancellation, or reformation of a deed to lands based upon such mistake.

2. **INDIANS—Cancellation—Mistake of Law.** The father and mother, members of the Chickasaw Nation, of less than one-half blood, for a valuable consideration, joined in executing a warranty deed conveying to their minor son a part of the allotment of their deceased daughter, who died intestate, unmarried, and without issue, believing that they owned only a life estate in the allotment, when under the law of descent the father owned the fee therein. **Held,** that after the father discovers that he was mistaken in the law of descent, under which the allotment of the deceased daughter was cast, he cannot maintain an action to cancel the deed to his son and to quiet title to the land conveyed on the ground of "mistake of law."

(Syllabus by Galbraith, C.)

*Error from Superior Court, Grady County;*
*Will Linn, Judge.*

Action by S. L. Newman, administrator of Montford T. Campbell, deceased, against Charles L. Campbell, to cancel a deed and quiet title to real estate. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

*Holding & Herr,* for plaintiff in error.

*Bond, Melton & Melton,* for defendant in error.

Opinion by GALBRAITH, C. Action was commenced in the superior court of Grady county by Montford T. Campbell to cancel a deed which he and his wife had joined

in executing, conveying real estate to their minor son, Chas. L. Campbell, and to quiet title to the land conveyed. After having commenced the action, Montford T. Campbell, on the 30th day of September, 1911, died, and the cause was revived in the name of his administrator, S. L. Newman, who claimed to prosecute the action as the representative of the creditors of the deceased. There was a trial to the court and a jury, and a general verdict returned in favor of the defendant. The court, upon motion, rendered judgment for the plaintiff, notwithstanding the general verdict, upon the answers made to certain interrogatories submitted to the jury. The decree of the court canceled the deed, and quieted the title as prayed in the petition. To review this decree the case has been brought here.

There are 12 assignments of error set out in the petition in error, but it will not be necessary to pass upon these, since there is one controlling question raised upon the record that will dispose of the case. This question is whether or not a mere mistake of law, stripped of all other circumstances, constitutes a ground for the reformation or cancellation of a conveyance founded on such mistake. The question is stated by the defendant in error in the brief as follows:

"The relief sought by the plaintiff in this case is upon the sole ground of the mistake of law in the execution and delivery of the conveyance sought to be canceled."

It appears that Montford T. Campbell was a member of the Chickasaw Nation of Indians, of less than one-half blood, and that his wife, Fannie Campbell, was not of Indian blood; that there were two children born to the Campbells, Chas. L., the plaintiff in error, and Edith L.; that each of the children, as well as the parents, received an

allotment of lands the same as other members of that nation; that after the patent for Edith's allotment had been issued and delivered she died, on April 1, 1906, intestate, unmarried and without issue, and seised of her allotment, located in Grady county; that she was survived by her brother, Chas. L. Campbell, and her father and mother. In April, 1908, the father arranged to sell one-half of Edith's allotment for a consideration of $2,000, and he and his wife joined in executing a warranty deed conveying this land to the purchaser, and in order to make this sale, and to satisfy the purchaser, they arranged with the guardian of Chas. L. Campbell, who was then a minor, about six years old, to make application to the county court of Grady county, where his guardianship was pending, authorizing him and his guardian to join in said deed, agreeing that in consideration of his so doing they would give him one-half of the purchase money of the land, to wit, $1,000. It seems that the father believed, and was advised by his counsel, that the title to Edith's allotment passed to her father and mother for life, and to her brother in fee, and that both the guardian and the county court and all parties understood that this allotment was a "new acquisition," and not an "estate of inheritance." The order authorizing the minor to join the father and mother in the execution of the deed was duly made, and the deed was executed and delivered and the purchase price was paid, $1,000 to his guardian, and the same amount to his father and mother; then, it appears, the father conceived the idea that he would like to have all of the purchase money, and in order to get the $1,000 that had been paid to the guardian for joining in this deed he proposed to the guardian that he and his wife would convey their supposed life estate in the remaining one-half of Edith's allotment to Chas. L. Campbell, in order

that he might have that land discharged of their claim. This arrangement was made with the guardian and acquiesced in by the county court, and the order duly made empowering the guardian to pay the $1,000 for their warranty deed conveying the remaining one-half of Edith's allotment to Chas. L. Campbell; and this deed was duly executed by the father and mother and delivered and duly recorded. It is this deed that the decree of the court canceled and the title to the land therein described that was quieted in the administrator of Montford T. Campbell, deceased.

The grounds relied on for cancellation are not that there was any fraud, undue influence, or mistake, or misrepresentation of any question of fact, it being alleged that all parties understood all of the facts connected with the execution of the deed, but it is charged that all the parties were mistaken in the law, i. e., that they thought the law was different from what it actually was, that is, that the father and mother and their counsel, and the guardian and his counsel, and the county court, believed and understood the law of descent (chapter 49, Mansfield's Dig.) under which the allotment of Edith Campbell was cast to be that the allotment was a "new acquisition," and not "an estate of inheritance," and that upon her death a life estate passed to the father and mother and the fee to her brother, while under the law at that time, as it has since been declared by the decisions of the courts, the allotment was "an estate of inheritance," and the entire allotment passed to the father, who was of Indian blood, and the mother, who was not of Indian blood, took no interest or title in Edith's allotment. It is contended that all parties to the deed acted under a mistaken view as to what the law was, and that this was a mistake of

law for which a court of equity will grant the relief prayed for in the petition.

This contention cannot be sustained. The rule, as stated in the Ency. of the U. S. Supreme Court Rep., vol 10, p. 821, is:

"It is the general rule that a mistake arising from any ignorance of law is not relievable in equity and that a mere mistake of law, stripped of all other circumstances, constitutes no ground for the reformation of a written contract and instrument founded on such mistake. But relief may be granted in the case of mistake of law, where such mistake is accompanied by other circumstances, demanding equitable interference, as, for instance, where a mistake is caused by fraud, imposition, or misrepresentation."

It appears in the case at bar that the mistake was not caused by fraud, imposition, or misrepresentation, but was a mere mistake of law and misapprehension or want of knowledge as to what the law actually was, that all parties understood the facts, and that when the deed sought to be canceled was executed all parties understood that they were executing a warranty deed, and the same was voluntarily executed and delivered, and it does not appear that the execution and delivery of this deed was "accompanied by any other circumstances demanding equitable interference."

In the case of *Utermehle v. Norment*, 197 U. S. 40, 25 Sup. Ct. 291, 49 L. Ed. 655, 3 Ann. Cas. 520, Mr. Justice Peckham, speaking for the court in answer to a similar contention, said:

"He insists, however, that the law pertaining to the taking of a legacy or devise under a will which prevents the assertion of the invalidity of the same will, ought not to bind him, because he was ignorant that such was the

law; in other words, the law should not cover his case because he was ignorant that it was the law. We know of no case where mere ignorance of the law, standing alone, constitutes any excuse or defense against its enforcement. It would be impossible to administer the law if ignorance of its provisions were a defense thereto. There are cases, undoubtedly, where ignorance of the law, united with fraudulent conduct on the part of others, or mistakes of fact relating thereto, will be regarded as a defense, but there must be some element, other than a mere mistake of law, which will afford an excuse."

And, again, in the course of the same opinion, it is said:

"It has been held from the earliest days, in both the federal and state courts, that a mistake of law, pure and simple, without the addition of any circumstances of fraud or misrepresentation, constitutes no basis for relief in law or in equity, and forms no excuse in favor of the party asserting that he made such mistake. *Hunt v. Rousmaniere's Ad'm*, 1 Pet. 1, 15 [7 L. Ed. 27]; *Bank of United States v. Daniel*, 12 Pet. 32, 55 [9 L. Ed. 989]; *United States v. Hodson*, 10 Wall. 395, 409 [19 L. Ed. 93]; *Lamborn v. County Commissioners*, 97 U. S. 181, 185 [24 L. Ed. 926] *Snell v. Insurance Co.*, 98 U. S. 85, 90, 92 [25 L. Ed. 52]. * * * Exceptional cases where relief has been given have been, as stated, where there was fraud or imposition upon the individual by the person seeking to avail himself of the contract of the other party. In this case there was, as we have said, neither fraud nor imposition, nor misrepresentation; plaintiff in error was not advised that, although he took under the will, he could attack it. It is a simple, bald case of an alleged mistake or misapprehension, on the part of plaintiff, of what the law was under certain circumstances, with no representation or persuasion on the part of others to cause him to act upon such mistaken assumption."

It is clear that the plaintiff in the trial court did not state in his petition any ground upon which a court of

equity was justified in granting him relief. There was no equity in his bill, and the demurrer thereto should have been sustained. The evidence offered and received at the trial did not go any further than the allegations of the bill. This simply showed a mere mistake of law, stripped of all other circumstances, which constitutes no ground for rescission or cancellation of the deed. In decreeing otherwise the trial court fell into error.

We therefore recommend that the decree appealed from be reversed, and the cause remanded, with directions to the trial court to vacate the decree and dismiss the cause.

By the Court: It is so ordered.

### ON PETITION FOR REHEARING.

Opinion by DEVEREUX, C. It is insisted by the petitioner that in our former opinion in this case we overlooked the provisions of our statute in regard to the right to grant relief for a mistake in law; and reference is made to sections 876, 896, 897, 898, 899, 907, 909, and 984, Rev. Laws 1910. These sections provide:

Section 876, Rev. Laws, provides:

"It is essential to the existence of a contract that there should be: First. Parties capable of contracting. Second. Their consent. Third. A lawful object; and, Fourth. Sufficient cause or consideration."

Section 896 provides:

"The consent of the parties to a contract must be: First. Free. Second. Mutual; and, Third. Communicated by each to the other."

Section 897 provides:

"A consent which is not free, is nevertheless not absolutely void, but may be rescinded by the parties in the manner prescribed by article five of this chapter."

Section 898 provides:

"An apparent consent is not real or free when obtained through: First. Duress. Second. Menace. Third. Fraud. Fourth. Undue influence; or, Fifth. Mistake."

Section 899 provides:

"Consent is deemed to have been through one of the causes mentioned in the last section, only when it would not have been given had such cause not existed."

Section 907 provides:

"Mistake may be either of fact or of law."

Section 909 provides:

"Mistakes of law constitute a mistake within the meaning of this article only when it arises from: First. A misapprehension of the law by all parties, all supposing that they knew and understood it, and all making substantially the same mistake as to the law; or, Second. A misapprehension of the law by one party, of which the others are aware at the time of contracting, but which they do not rectify."

Section 984, a part of the article in question, is as follows:

"A party to a contract may rescind the same in the following cases only: First. If the consent of the party rescinding or of any party voluntarily contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds, or any other party to the contract jointly interested with such party.  *  *  *  Fourth. If such consideration, before it is rendered to him, fails in a material respect, from any cause."

The only provisions of the statute which have any possible bearing on the question are sections 898, 907, 909 and 984. We have been unable to find any direct authority construing these sections on the question now presented, and must therefore be governed by general

principles governing the construction of statutes.

It is a well-known fact that our statute on this subject is a codification of principles, heretofore decided as governing contracts. Sections 907 and 909 are only statutory definitions under the general head of the nature of contracts, and are a codification of the doctrine to be gathered from numerous cases. The really important question is whether the Legislature intended by section 984, to abrogate the rule that equity will not relieve from pure mistakes of law. We think it clear that it did not. Reading the whole section together, it will be seen that it embraces the well-settled grounds on which equity will give relief, such as duress, menace, fraud, mistake, undue influence, etc. Should we give the statute the construction contended for, it would have to apply in all cases, and would do away entirely with the rule that equity will not relieve against a pure mistake of law, for there could be no middle ground, and, if the statute should receive this construction, this well settled rule of equity jurisprudence would be abrogated. We do not believe that any fair construction of the words of the statute would warrant us in making such a radical departure from settled doctrine.

In the case at bar the plaintiff, who now seeks to set aside his deed to the infant, was the actor throughout the entire transaction. The infant was of tender years, and was the passive recipient of the transaction devised by the plaintiff. For his own benefit, and in order to get control of the purchase money, the plaintiff initiated this scheme, and now, when he finds that he was mistaken, attempts to cancel it. We adhere to our former holding, that where relief is sought purely on the ground of a

mistake of law, and there is no independent equity to support the petition, the relief will not be granted. In addition to the authorities cited in the former opinion, we call attention to the following cases, which fully support our former decision: *Hunt v. Rousmaniere*, 1 Pet. 1, on pages 13 and 15, 7 L. Ed. 27; *Id.*, 8 Wheat. 174, on page 214, 5 L. Ed. 589. In *Trigg v. Read*, 5 Humph. (Tenn.) 529, 42 Am. Dec. 447, it is said:

"*Ignorantia legis neminem excusat.* If this were not so, there would be no saying to what extent the excuse of ignorance might not be carried; and if upon the mere ground of ignorance of the law men were permitted to overhaul or extinguish their most solemn contracts, there would be much embarassing litigation in all judicial tribunals, and no small danger of injustice from the nature and difficulty of the proof."

In Bispham's Principles of Equity (8th Ed.), sec. 187, it is said:

"It has been suggested by a very distinguished equity judge, Lord Westbury, that the conflicting cases in regard to the application in equity of the maxim '*Ignorantia juris non excusat*' might be reconciled by considering that a distinction exists between '*jus*' as used to indicate general law, and the same word when employed to denote private right. But a pure mistake of law in reference to individual rights would seem to be, properly, no more remediable in equity than a pure mistake as to public law; and if, on the other hand, there were circumstances which would prevent the application of the maxim in cases of individual rights, those same circumstances would be equally effective in justifying relief when mistakes are made in the rules of general law. The distinction suggested by Lord Westbury cannot, therefore, be considered sound. It may be added, just here, that a mistake of the law of another state is a mistake of fact."

In Brown's Legal Maxims, p. 253, it is said:

"Ignorance may be either of law or fact; for instance, if the heir is ignorant of the death of his ancestor, he is ignorant of a fact; but if, being aware of his death, and of his own relationship, he is nevertheless ignorant that certain rights have thereby become vested in him, he is ignorant of the law."

We have carefully examined the cases cited in the petition for rehearing, but we do not think they apply. An examination of them will show that there was an independent equity in addition to the mistake of law.

We therefore recommend that the petition for rehearing be denied.

By the Court:  It is so ordered.