**BROOKS et al. v. TUCKER et al.**

No. 10884—Opinion Filed June 28, 1921.

Rehearing Denied Nov. 1, 1921.

(Syllabus.)

1. **Guardian and Ward—Fraudulent Sales —Bona Fide Purchaser.**

Where the guardian sells the lands of his wards upon a secret understanding that the purchaser shall not pay for the same, but shall, after confirmation of the sale and delivery of guardian's deed, secure a loan upon the lands, turn the money over to the guardian, and then deed the lands to the wife of the guardian, such a sale constitutes a fraud upon the estates of the wards and the sale may be set aside in an action by the wards against such purchaser

except where the title to the lands have vested in a bona fide purchaser.

## 2. Guardian and Ward—Fraudulent Sales —Bona Fide Purchaser — Remedy of Wards.

Where the lands of minors have been sold by their guardian in consummation of a fraudulent agreement between the guardian and the purchaser, and the probate procedure under which such sale was made is regular, the title of the property sold under such sale vests in a bona fide purchaser of the grantee at such sale without notice of the fraudulent agreement; the remedy of the wards is an action against the guardian and his bonds for the amount of their damage resulting from the fraudulent sale. (Berry v. Tolleson et ux., 68 Oklahoma, 172 Pac. 630.)

## 3. Same — Evidence — "Bona Fide Purchaser."

The essential elements which constitute a bona fide purchaser are valuable consideration, the absence of notice, and the presence of good faith. The evidence examined in this cause, and the purchaser held to be a bona fide purchaser.

Error from District Court, Jefferson County; Cham Jones, Judge.

Action by Boston Mutual Life Insurance Company, a corporation, against Cassie Ellen Tucker and George Wilson Tucker, minor defendants, B. O. Tucker, legal guardian, Noma Simons, George Simons, P. H. Brooks, Blanche Brooks, et al., for foreclosure of real estate mortgage. Cassie Ellen Tucker and George Wilson Tucker, minor defendants, filed cross-petition against plaintiff and P. H. Brooks and Blanche Brooks, defendant. Judgment in favor of the plaintiff foreclosing the mortgage and judgment in favor of the defendants Cassie Ellen Tucker and George Wilson Tucker upon their cross-petition against the defendants P. H. Brooks and Blanche Brooks, decreeing cancellation of deed. P. H. Brooks and Blanche Brooks appeal from judgment decreeing cancellation of deed. Judgment reversed and remanded with directions.

H. A. Ledbetter and Guy Green, for plaintiffs in error.

T. B. Orr, United States Probate Attorney, and Moore & West, for defendants in error.

KENNAMER, J. The Boston Mutual Life Insurance Company instituted this action in the district court of Jefferson county against Noma Simons, George Simons, Cassie Ellen Tucker, a minor, George Wilson Tucker, a minor, P. H. Brooks, Blanche Brooks et al., to foreclose a mortgage executed by Noma Simons and George Simons upon certain lands allotted to Cassie Ellen Tucker and George Tucker, minors, and members of the Chickasaw Tribe of Indians, of the unrestricted class. It appears from the pleadings and evidence introduced in the trial of the cause that the lands in controversy were owned in fee simple by Cassie Ellen Tucker and George Wilson Tucker, minors; that B. O. Tucker, as the legal guardian of said minors, sold the lands through a probate sale to George Simons; that the probate sale in all respects appeared regular; that Simons, the purchaser at the probate sale, in a few days after the lands had been conveyed to him by guardian's deed, executed a mortgage to the Deming Investment Company to secure a loan of $1,100; that after having received the money on said loan and turned the money over to the guardian, B. O. Tucker, he deeded the lands which he had purchased at the guardianship sale to Victoria Tucker, the wife of the guardian; that the deed was made by Simons to the wife of Tucker, the guardian, about 60 days from the time that Simons had purchased the land at the guardianship sale. The Deming Investment Company had sold the loan to the Boston Mutual Life Insurance Company, the plaintiff in this action. It is undisputed that Tucker, the guardian, had made an agreement with Simons to purchase the lands at the guardianship sale and to secure a loan upon said lands and then reconvey them to him or his wife. After Simons, the purchaser, had secured the loan and deeded the lands to Victoria Tucker, the wife of the guardian, Victoria Tucker and her husband, B. O. Tucker, the guardian, executed a deed purporting to convey the lands to Roy Evans, and Roy Evans sold the lands to P. H. Brooks, one of the defendants in this action and whose title is attacked by the Tucker minor defendants herein.

Cassie Ellen Tucker and George Wilson Tucker, the minor defendants, filed answer and cross-petition pleading that the sale made by their guardian, B. O. Tucker, to George Simons was void on account of the fraud practiced by the guardian and purchaser at said sale; charged the Boston Mutual Life Insurance Company, plaintiff in the action, and P. H. Brooks, who was asserting title to the property, with actual notice of the fraud perpetrated in the probate sale of the property, and prayed the judgment of the court quieting their title to the property.

Judgment was rendered foreclosing the mortgage of the Boston Mutual Life Insur-

ance Company. The trial court held that the Boston Mutual Life Insurance Company was an incumbrancer without notice of the fraud committed in the sale of· the property by the guardian, but judgment was rendered in favor of the minor defendants on their cross-petition decreeing a cancellation of the deed executed by Roy Evans to P. H. Brooks, decreeing the defendant Brooks to have no interest in the property. The defendant P. H. Brooks and Blanche Brooks, his wife, have appealed to this court and have assigned numerous grounds of error.

There is only one question to be determined by this court in order to dispose of this appeal. The question is, whether or not the plaintiff in error P. H. Brooks was an innocent purchaser of the property in controversy. Upon an examination of the evidence found in the record it appears that P. H. Brooks purchased the lands in controversy from Roy Evans, paying Roy Evans the sum of $3,500 in property, which consisted of the home of P. H. Brooks and wife, located in Temple, and other property; that P. H. Brooks assumed the loan, which had been placed upon the land by George Simons, the purchaser at guardianship sale; that the consideration paid by Brooks was a fair value for the land; that Brooks, prior to closing the deal for the purchase of the land, requested an abstract of the title, which was furnished to him, and he sent his wife from Temple, Oklahoma, to Lawton, where he had formerly lived, and submitted the abstract to McElhoes, Ferris & Rhinefort, lawyers of that city, for an opinion as to whether or not Evans could convey him title; that these attorneys wrote a letter, in which they expressed the opinion that the title to the land was absolutely good. There is no evidence in the record· which in any way tends to show that Brooks in purchasing the lands had actual notice of the fraud· committed by the guardian and purchaser in the probate sale. The record, however, does disclose that the probate attorney has, with great vigilance, prosecuted this action to recover the lands for these minors, and while he is to be commended for endeavoring to protect the interest of these minor defendants, we are of the opinion that his efforts should be devoted to another action against the guardian, B. O. Tucker, and the sureties upon his guardian bonds; and, undoubtedly, grounds exist for removal proceedings against B. O. Tucker as guardian for his children. but the testimony of B. O. Tucker shows that he is still the legal guardian.

The statutes in force in this state regulating the sale of minors' property contemplate that upon a return of a sale having been filed by a guardian, the return of sale will be under order of the court set for hearing at a future date; at such time the county court, sitting in probate, will have a full and complete hearing as to the acts of the guardian in conducting the sale. The hearing on the return contemplates that the court will hear testimony offered in support of the return of sale, and that if after a full hearing the testimony shows that the sale has been fairly conducted and the property sold for its fair cash value and the guardian has in all his acts conducted the sale as provided by law, the court will enter an order confirming the sale. The law contemplates that the court must be satisfied from credible testimony adduced on the hearing of the return of the sale that the same has been conducted in accordance with the statutes and a fair value paid for the property, and the decree confirming the sale is a solemn judgment of the court vouching for the truthfulness of all the essential facts necessary to constitute a valid sale. Purchasers in dealing with this class of land have a right to assume that the court has faithfully performed his duty and there is no excuse for the existence of these fraudulent and sham sales, except the gross neglect of duty on the part of courts entering the decrees of confirmation in this class of sales. No court should ever confirm a sale made by a guardian until the judge thereof is convinced by credible testimony that the property has been sold for a fair value and the money paid to the guardian or deposited with the court for the guardian. But where minors have been defrauded by fraudulent sales of their property, they are not without a remedy, but they have a cause of action against the guardian and his bondsmen on the general and special sales bonds to the extent of their damages on account of the fraud committed by the guardian in making the sale, and the judges of county courts, who negligently make a practice of informally approving such sales, are incompetent to hold an office of trust and should be removed from office. It is inequitable to make bona fide purchasers of the property at such sales suffer on account of the wrongs committed by such guardians and courts.

It is true that in suits brought to set aside conveyances obtained by fraud, and the fraud clearly appears, the conveyances will be set aside as between the parties; but where the rights of third persons, who

are purchasers without notice for a valuable consideration, have intervened, the same cannot be disregarded, but according to the rules of equity must be protected if the title to property in this state is to command respect and confidence. Fletcher v. Peck, 10 U. S. 132, 6 Cranch, 177; Morrow v. Graves et al. (Cal.) 19 Pac. 489.

In the case at bar the plaintiff in error parted with the title to his home and practically all of the property he possessed, and after sending his wife several miles to secure the opinion of a firm of lawyers that he had the utmost confidence in, and the record shows that an ex-member of Congress appears as a member of the firm of lawyers that approved the title. No doubt, that the Brookses had known these lawyers for years, and being advised that the title was good, acted in the best of faith in parting with the earnings of a lifetime in order to secure a tract of land upon which to make a home. The average man would not do more than the Brookses did in this case. For years on the east side of the state land titles have been a very much mooted question with the best of lawyers, and to say that the Brookses, unlearned in the niceties of the law, should have analyzed the probate proceedings in the sale of these lands and determined whether or not the county court of Jefferson county was permitting guardians and sham purchasers to lightly commit frauds would be applying an inequitable rule of exaction to them. We believe the rule announced by Mr. Justice Owen in the case of Berry v. Tolleson, 68 Oklahoma, 172 Pac. 630, to be founded upon reason and supported by the authorities. The opinion in part is as follows:

"We have the same condition as if there were no consideration whatever passed from Tolleson to the guardian, or as if the guardian, after receiving the money, had misappropriated it. He is liable under his bond to the minors to the extent of their damage as the result of this fraud. The statute requires a bond to cover the proceeds of the sale in addition to the general bond of the guardian and was enacted to meet conditions arising from just such fraud as appears here. This bond contemplates a sale being conducted as provided by law. It covers the collection and retention of the purchase price. If the guardian fails to collect, or, after collecting, fails to retain the purchase price, the liability accrues upon his bond. Dunleavy v. Mayfield, 56 Okla. 470. 155 Pac. 1145; Allison v. Crummey, 64 Okla. 20, 166 Pac. 691; In re Potter's Estate, 249 Pa. 158, 94 Atl. 465, L. R. A. 1916A, 637 * * * Probate sales in this state are entitled to the same faith and credit of any judicial sale, and will not be set aside as against an innocent purchaser on proof of secret agreements between the guardian and the original purchaser, which are not disclosed by the record and cannot be ascertained by such investigation as would ordinarily be made by a reasonably prudent person."

The cause is reversed and remanded to the district court of Jefferson county, with directions to the court to enter judgment in favor of P. H. Brooks quieting his title to the lands in controversy, subject to the mortgage of Boston Mutual Life Insurance Company.

HARRISON, C. J., and JOHNSON, MILLER, and ELTING, JJ., concur.