GAY et al. v. WILLIAMS et al.

No. 11345—Opinion Filed April 1, 1924.

Rehearing Denied May 13, 1924.

(Syllabus.)

1. **Guardian and Ward—Fraudulent Guardian Sale—Right to Set Aside.**

A sale by a guardian, of real estate belonging to his ward, with a secret understanding with the purchaser that no consideration shall be paid therefor by him, and for the purpose of vesting the title in the guardian or his wife through such third person, constitutes a fraud on the estate of the minor and may be set aside against the parties to the fraud and any person not a bona fide purchaser for value, but such sale is not void.

2. **Same—Bona Fide Purchaser — Record Notice—Duty of Inquiry.**

A purchaser of property sold under circumstances stated above is charged with constructive notice of all facts disclosed by the record and with implied notice of such facts as would have been revealed by such inquiry as a reasonably prudent man would have made after such actual notice as would put a prudent person on inquiry, or after being charged with such actual notice by the record, but otherwise no duty to make inquiry existed.

3. **Same—Sufficiency of Inquiry.**

Existence of facts sufficient to excite the suspicion of an ordinary prudent man and which charge him with the duty of making inquiry does not deprive such person of his status as a bona fide purchaser for value, if such person did make such inquiry as an ordinarily prudent man would have made and failed to discover the fraud.

Error from District Court, Pittsburg County; Harve L. Melton, Judge.

Action by Charlotte W. Gay and another against Mary E. Williams and others. Judgment for defendants, and plaintiffs appeal. Judgment reversed and rendered.

[Former opinion, published in 219 Pac. 906, withdrawn.]

Guy L. Andrews, Frank G. Anderson, and Warner, Dean, Langworthy, Thompson & Williams, for plaintiffs in error.

George M. Porter and John L. Fuller, for defendants in error.

COCHRAN, J. This action was commenced by the plaintiffs in error to foreclose a real estate mortgage executed by Mary E. Williams and Thomas H. Williams, her husband, to Holmes Sons and assigned to plaintiffs in error. Leo McWilliams, Alvarah Viola Williams, and Darthula Queensberry (nee Williams), who were made defendants in the foreclosure proceedings, filed answers and cross-petitions, in which they allege in substance that T. H. Williams was appointed guardian for each of said cross-petitioners by the county court of Pittsburg county, and in 1912 said guardian sold 50 acres of the land belonging to each of his wards, comprising the 200 acres of land covered by the mortgage which is the basis of this suit, and the sale was confirmed by the county court and guardian's deed executed to one Tisdale. That thereafter Tisdale deeded the lands to Laura Burns, and Laura Burns thereafter deeded the same to Mary E. Williams, and Mary E. Williams and husband thereafter executed the mortgage in controversy to Holmes Sons. Cross-petitioners allege that the guardian's deed and all the subsequent deeds and conveyances were void for the reason that the purported guardian sale was not made in good faith to Tisdale, but was made by the guardian with the understanding and agreement that the same should be conveyed to Laura Burns, a sister-in-law of the guardian, and from her to Mary E. Williams, the wife of the guardian, and that the guardian, George Tisdale, Laura Burns, and Mary E. Williams acted conjointly with the purpose of divesting said wards of their title to said land and for purpose of vesting title to the same in Thomas H. Williams, the guardian; and that the conveyances were without consideration and were made for the purpose of defrauding the minors of their property. It is further alleged that the mortgage sought to be foreclosed in this action was void for the reason that Holmes Sons and the plaintiffs in error had knowledge of the facts with reference to the fraud, or with the use of ordinary care could have had knowledge thereof. The trial court entered judgment decreeing the cross-petitioners to be the owners of the land and canceling the mortgage which plaintiffs in error sought to foreclose. From this judgment the plaintiffs in error have appealed. The sole question presented for consideration here is, whether the decree of the trial court canceling the mortgage of the plaintiffs in error is sustained by sufficient evidence.

Thomas H. Williams was appointed guardian of the cross-petitioners by the county court of Pittsburg county in 1908, and on June 4, 1912, filed his separate petitions for authority to sell 50 acres of land belonging to each of his wards. The sale was regularly made, return of sale filed, and upon a hearing by the county court an order of confirmation was entered, and on July 1, 1912, guardian's deeds were executed and delivered by the guardian to George Tisdale, the purchaser at the guardian's sale. On August 9, 1912, George Tisdale, joined by his wife, executed a warranty deed to said lands to Laura Burns, who was a sister-in-law of the guardian. On September 4, 1912, Laura Burns, joined by her husband, executed a warranty deed to said lands to Mary E. Williams, who was the wife of T. H. Williams, the guardian of said minors. Laura Burns and her husband executed a mortgage on the premises to the American Investment Company for $2,000 and a second mortgage to secure the commission note on said loans to R. L. Dukes. The money from this first mortgage was delivered by Laura Burns to Mary E. Williams. The guardian's deeds to Tisdale were filed of record August 31, 1912. On September 16, 1914, Mary E. Williams and her husband executed the mortgage in controversy to Holmes Sons, and procured the money on said mortgage to pay off the mortgages which had been previously given on this land. The local agent for Holmes Sons who handled this loan was named Byars, and he knew Mary E. Williams and Laura Burns and knew that Laura Burns was a sister-in-law of T. H. Williams, and that Mary E. Williams was his wife. Before making the mortgage and paying out the money thereon Holmes Sons required the execution of three written affidavits in connection with the guardian's sale, one by George Tisdale, one by Laura Burns, and one by Mary E. Williams. These affidavits were made and delivered to the loan company prior to the time the money was paid out on the mortgage. Tisdale stated in his affidavit that he was a bona fide purchaser of the property at the guardian's sale for a good and valuable consideration; that the consideration was paid and that the sale by him to Laura Burns was a bona fide sale and for a good consideration. Laura Burns stated in her affidavit that she purchased the property from Tisdale for a good consideration and sold the property to Mary E. Williams in good faith and for a valuable consideration. Mary E. Williams stated in her affidavit

that the purchase by her from Laura Burns was a bona fide purchase for a good consideration, that so far as she knew the sale of the property was regular and for a good consideration, that she had no interest in the property before the sale from Laura Burns to her and that the purchase by her was not in accordance with any agreement made prior to September 1, 1912. The guardian, T. H. Williams, had filed in the county court a return of sale reciting the sale of said property for cash and had executed the guardian's deed reciting the receipt of the purchase price and, prior to the time Holmes Sons made the mortgage in controversy, the guardian had filed his written report to the county court showing the expenditure of the funds which he alleged had been received on the sale and the county court of Pittsburg county had approved and allowed the report so filed. It is conceded that Holmes Sons and the plaintiffs in error had no actual knowledge of the alleged fraud perpetrated on the minors in the sale of their property, but it is contended that the transfer of the property from Tisdale to Laura Burns, a sister-in-law of the guardian, within a month of the guardian's sale and a transfer by her to the wife of the guardian within 63 days of the guardian's sale, and the fact that a mortgage was executed by Laura Burns before any of the deeds were placed of record and that Byars, the agent of Holmes Sons, had knowledge of the relation between Laura Burns, Mary E. Williams, and T. H. Williams, the guardian, was knowledge of such facts as to amount to constructive notice of the fraud. The trial court took this view and found that the investigation made by Holmes Sons was only a superficial investigation and was not sufficient to protect the mortgagee as a bona fide purchaser. The propositions of law involved here have been well settled by this court, and it only remains to weigh the facts according to these decisions and to ascertain whether they are sufficient to charge the mortgagee and the assignee of the mortgage with notice of the fraud perpetrated by the guardian.

Whether this sale is considered a sale to the wife of the guardian through a third person or is considered a sale to the guardian himself through a third person, the sale was not void, but voidable. Such sale may be set aside in an action of the ward against the purchaser or any other person who acquires rights with notice of such fraud, but such sales will not be set aside as against an innocent purchaser on proof of secret agreements between the guardian and

the original purchaser which are not disclosed by the record and cannot be ascertained by an investigation such as would ordinarily be made by a reasonably prudent person. Langley v. Ford, 68 Okla. 83, 171 Pac. 471; Brooks v. Tucker, 83 Okla. 255, 201 Pac. 643; Berry v. Tolleson, 68 Okla. 158, 172 Pac. 630; Allison v. Crummey, 64 Okla. 20, 166 Pac. 691; Winsted v. Shank, 68 Okla. 269, 173 Pac. 1041; Collins Inv. Co. v. Waide, 70 Oklahoma, 173 Pac. 835.

It may be conceded that Holmes Sons had knowledge of sufficient facts and circumstances to put them upon inquiry. Having knowledge of such facts, it was their duty to make such inquiry as an ordinarily prudent person would make, and they are chargeable with notice of such facts as such inquiry prosecuted with reasonable diligence would have revealed.

In Cooper v. Flesner, 24 Okla. 47, 103 Pac. 1016, it was said:

"One who purchases land with knowledge of such facts as would put a prudent man upon inquiry, which if prosecuted with ordinary diligence, would lead to actual notice of rights claimed adversely to his vendor, is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the 'actual notice' he would have received." (See, also, Burton v. Compton, 50 Okla. 365, 150 Pac. 1080.)

In Berry v. Tolleson et ux., supra, the court said:

"The rule is well settled that Berry is chargeable with any knowledge he would have received upon inquiry. if the circumstances mentioned were such as to arouse the suspicions of a reasonably prudent man, or to suggest to his mind any such irregularity in the proceedings as might affect the sale."

In Winsted v. Shank, supra, it was said:

"Whatever is 'notice' enough to excite attention and put a reasonably prudent person on his guard and calls for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant with it."

In Creek Land & Improvement Co. v. Davis, 28 Okla. 579, 115 Pac. 468, it is stated in the first paragraph of the syllabus:

"A purchaser of lands takes them with constructive notice of whatever appears in the conveyances which constitute his chain of title; and, if sufficient appears therein to put a prudent man on inquiry, which would, if prosecuted with ordinary diligence, lead to actual notice of a right or title in conflict with that he is about to purchase, and he fails to make such inquiry, the law will

charge him with the actual notice he would have received if he had made it."

Considering the facts the loan company had knowledge of, or should have known, it was its duty to ascertain from all persons who appeared to have any knowledge of the facts, as to whether the sale was made in good faith and for a valuable consideration. The loan company did make this inquiry. In making inquiry it had before it the sworn statement of the guardian filed in the guardianship proceedings reporting a sale to Tisdale for cash. It made inquiry of Tisdale and received the sworn written statement from him that the purchase was in good faith and for a valuable consideration paid by him, and that the sale made by him to Laura Burns was a bona fide sale for a valuable consideration. Similar statements were procured from Laura Burns and Mrs. Williams. The existence of the facts which were sufficient to put the loan company upon inquiry did not deprive the loan company of the standing of a bona fide purchaser; the existence of those facts did not charge the loan company with knowledge of the fraud. Had the loan company failed to make inquiry, it might be said that it has no standing as a bona fide purchaser, but having made the inquiry, the loan company was chargeable with notice of such facts only as would have been discovered by following the inquiry with the reasonable diligence of an ordinarily prudent man. In our opinion the inquiry made was made with such reasonable diligence as an ordinarily prudent man would have used. The written affidavits covered the very points which are now urged as grounds for setting aside the guardian's sale, and the guardian's sale can be set aside only by finding that the statements made in those affidavits are false. The loan company procured statements from all of the parties who were connected with the transaction in any way, and not only procured such statements, but had the same reduced to writing and sworn to and, if these statements were true, the sale would have been valid. It cannot, therefore, be said that the exercise of reasonable diligence would have disclosed the fraud. It is true that the affidavits made by the various parties did not recite the amount of the consideration which had been paid in each instance, but they did state that the conveyances were for valuable considerations and were made in good faith, and the affidavit of Mrs. Williams stated specifically that there was no agreement such as is now contended existed. In Brook v. Tucker, supra, the court had under consideration a sale made under circumstances very similar to

these existing in the instant case, and where the title vested in the wife of the guardian after the original sale made by the guardian to a third person, and where no consideration passed on the transfer from the original purchaser to the wife of the guardian, made within 60 days from the time of the guardian's sale, the court said:

"It is inequitable to make bona fide purchasers of the property at such sales suffer on account of the wrongs committed by such guardians and courts.

"It is true that in suits brought to set aside conveyances obtained by fraud, and the fraud clearly appears, the conveyances will be set aside as between the parties; but where the rights of third persons, who are purchasers without notice for a valuable consideration, have intervened, the same cannot be disregarded, but according to the rules of equity must be protected if the title to property in this state is to command respect and confidence."

In that case, the person who claims to be a bona fide purchaser for value of said property submitted his title to reputable attorneys, who passed the same, and the court held "that the average man would not have done more than Brooks did in this case."

In the instant case it does not appear whether the title was submitted to a reputable attorney for examination or not, but that does not alter the situation here. An attorney upon examination would have required no more than is required by the law, to wit, upon discovery of the existence of facts disclosed by the abstract sufficient to put a prudent man upon inquiry, that the loan company should make such inquiry as an ordinarily prudent man would make. In the instant case, the loan company discovered the existence of such facts, which caused it to make inquiry, and it is our opinion that it followed that inquiry with the reasonable diligence of an ordinarily prudent man, and having done so and having failed to discover the existence of any defect in the title or the existence of the fraud, which had been perpetrated, and having paid out its money on the mortgage in good faith, it is entitled to protection as a bona fide purchaser for value. Since Holmes Sons were bona fide purchasers for value, the plaintiffs in error, having taken title to the mortgage from such bona fide purchaser, are entitled to the protection afforded a bona fide purchaser, whether such plaintiffs in error made inquiry in regard to the title or used diligence in examining the same or not. 39 Cyc. 1772; Ryan v. Staples. 78 Fed. 563.

It is our opinion that the judgment of

the trial court should be reversed, and judgment rendered for the plaintiffs decreeing the mortgage to be a valid lien on the premises and foreclosing the same, and it is so ordered.

JOHNSON, C. J., and NICHOLSON, LYDICK, and WARREN, JJ., concur.