## RIDDLE v. COMMERCE TRUST CO. et al.

No. 13968—Opinion Filed April 7, 1925.

**1. Mortgages—"Bona Fide Incumbrancer."**

The elements which constitute bona fide incumbrancers are valuable consideration. absence of notice, and presence of good faith; and where a party executes a quitclaim deed with knowledge of its contents and effect, and permits it to go of record, he cannot be heard to complain against incumbrancers who, in good faith, rely upon the record title.

**2. Same—Mortgage Held Valid.**

Record examined; and held to support the judgment in favor of the mortgagee defendants.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by Annie Riddle against Commerce Trust Company, a corporation, the Oklahoma State Bank of Eufaula, a corporation, and Tokio Riddle. From the judgment, plaintiff appeals. Affirmed.

A. E. Graham and O. G. Rollins, for plaintiff in error.

W. J. Horton and Jackman A. Gill, for defendant in error Commerce Trust Company.

K. B. Turner, M. E. Turner, J. G. Harley, and H. B. Parris, for defendant in error Oklahoma State Bank of Eufaula.

Opinion by SHACKELFORD, C. The plaintiff in error was the plaintiff below. The defendants in error were the defendants. The parties will be designated herein as plaintiff and defendants as they appeared in the trial court.

This suit was brought by plaintiff in the district court of Okmulgee county. the petition being filed in May, 1921. The plaintiff sought the cancellation of a quitclaim deed made by her to Tokio Riddle, dated January 19, 1921, covering and purporting to convey all her rights in land described as the northwest quarter of section 12, township 12 north, range 13 east, 160 acres, more or less, in Okmulgee county, and also seeks to cancel three real estate mortgages covering the said land, made by Tokio Riddle, two for $3,000 and $900, respectively, in favor of defendant Commerce Trust Company, dated December 16, 1920, and one for $2,030.-48, in favor of defendant Oklahoma State Bank of Eufaula, dated March 14, 1921. The petition alleges that the plaintiff is the widow of Rafert Riddle, who was enrolled upon the Creek Indian rolls. and to whom was allotted said land, and who died seized thereof on the 10th of October. 1920, intestate and without issue, leaving him surviving his mother, Tokio Riddle, and the plaintiff, as his heirs at law; and that the quitclaim deed was procured by fraud and misrepresentations made by Tokio Riddle, and the mortgages were executed by her (Tokio Riddle) ; and the mortgagees had notice and knowledge of the fraud; and all the instruments are void as against the plaintiff, who is alleged to be owner of an undivided one-half interest in the land by inheritance as the wife of the deceased allottee.

The three defendants answered separately to the effect that the plaintiff is a noncitizen and not a Creek descendant; and that under the law in effect at the time of the death of the allottee and at the time the instruments were made the plaintiff did not inherit any interest in her citizen husband's land. The defendant Tokio Riddle relied upon having paid consideration for the quitclaim deed, and denied the fraud. The defendant Commerce Trust Company, in effect, alleged that although the two mortgages were made before the quitclaim deed was executed, the money was not paid out until after the quitclaim deed was of record; and that defendant was not a party to any fraud. and did not know of the alleged fraud. and is an innocent holder. The Oklahoma State

Bank relied upon the quitclaim deed, and was not a party to and knew nothing of any fraud in procuring the quitclaim deed, and is an innocent holder.

The cause was tried to the court, resulting in a judgment in favor of the plaintiff for an undivided one-half interest in the land, subject to the incumbrances of the said three mortgages, which were held to be valid liens upon the land as against both plaintiff and the defendant Tokio Riddle.

The plaintiff appeals from that part of the judgment of the court below holding in effect that the mortgages referred to are valid liens upon the land as against the plaintiff as well as against the defendant Tokio Riddle. She presents her assignments of error under the proposition that the judgment is contrary to the law and the evidence.

It is admitted that the plaintiff was the noncitizen wife of Rafert Riddle at the time of his death in October, 1920, and that Tokio Riddle was mother of the deceased and was on the Creek rolls, and that they two were the sole heirs at law of Rafert Riddle. At the time of Rafert Riddle's death he was the owner of the land in controversy and some personal property worth less than $1,000, but which was incumbered by chattel mortgages for around $1,200, and his estate was further incumbered by expenses of his last sickness and funeral expenses which amounted to a few hundred dollars. It seems that it was well understood between plaintiff and defendant Tokio Riddle, that so far as the land was concerned the plaintiff could not inherit any interest therein for the reason that she was a noncitizen, but the land would pass by inheritance to Tokio Riddle, mother of the allottee. Some contention, however, was made that the land of Rafert Riddle might be subject to the payment of debts owing by him at the time of his death, and his funeral expenses. There was an administrator appointed for the estate of Rafert Riddle, and the personal property invoiced and appraised at $800. A dispute arose between plaintiff and Tokio Riddle as to the personal estate, plaintiff claiming it all and Tokio Riddle claiming half of it; and out of the settlement of this dispute came the quitclaim deed. The plaintiff contends that she did not sign a deed; that she did not know that she had any interest in the land, and the instrument she signed was a paper to get her stock, the personal property of her dead husband. She said in her testimony: "I thought I was signing a deed to get the stock."

The clear weight of the evidence tends to establish that when the dispute arose both of these women employed attorneys to represent them. Their respective attorneys, in advance of the decision in the case of Pigeon, Admx., v. Stevens et al., 81 Okla. 180, 198 Pac. 309, thought plaintiff would inherit no interest in the land of Rafert Riddle, but finally reached an agreement for and on behalf of their respective clients by which the personal property was released to plaintiff upon her executing and delivering the quitclaim deed to the land in favor of Tokio Riddle, with the understanding that Tokio Riddle should pay off all the indebtedness of the estate of Rafert Riddle, except a part of the funeral expenses. This agreement was carried out by their respective clients, and the deed was placed of record. The testimony clearly shows that the plaintiff had full information as to the contents of the deed, and signed and acknowledged it under the instruction and direction of her attorney. She was shifting the responsibility for the payment of her dead husband's debts and funeral expenses or a considerable part thereof, by making the deed purporting to convey something which both she and her attorney thought she did not own; and also got released to her her dead husband's personal property free of any debts. There is no reliable evidence in this record supporting the contention that there was any fraud or unlawful and wrongful misrepresentations made by anybody to induce the plaintiff to make the quitclaim deed. That all the parties and their attorneys thought that plaintiff would not inherit any interest in the allotment of Rafert Riddle was no fault of theirs. It had become a well established rule of property that a noncitizen heir could not inherit the Creek properties under the circumstances presented here; and this rule obtained until after all these transactions had been made. The evidence tends to show that while Tokio Riddle had executed the two mortgages to defendant Commerce Trust Company in advance of the delivery and recording of the quitclaim deed made by plaintiff, it never paid out the money until after the deed was recorded. This detendent, it seems, was not willing to rely upon the rule of property, or at least, out of an abundance of caution required the quitclaim deed from the noncitizen wife of the deceased allottee before it would pay out on the loan, and after the deed was filed, relied upon the record title and paid the money to the mortgagor. The mortgage made to the Oklahoma State Bank was made after the quitclaim deed was of record, and the mortgagee relied upon the record title. There

seems to be nothing in the record to put either of the mortgagees upon inquiry as to how the quitclaim deed was procured; and the deed itself seems to show that it was based upon a valuable consideration. Inquiry would have discovered nothing more than that the parties grantor and grantee had been mutually mistaken as to a matter of law governing the inheritance; and such mistake of law did not appear until after the decision in Pigeon v. Stevens, supra. Even between the parties to the conveyance it seems that such mistake of law would not be sufficient to require a rescission or cancellation of the deed. Certainly such mistake of law on the part of the parties to the quitclaim deed would be insufficient to set aside the mortgages made by the grantee named in the deed. It was held in Holladay v. Ward, 84 Okla. 247, 203 Pac. 217, that:

"A mere mistake of law, not accompanied by other circumstances demanding equitable relief, constitutes no ground for res issi a. cancellation or reformation of a deed to lands, based upon such mistake."

To like effect are Campbell v. Newman. 51 Okla. 121, 151 Pac. 602, and Palmer v. Cully, 52 Okla. 454, 153 Pac. 454.

But for the decision in Pigeon v. Stevens, supra, there would not even have been a mistake of law. But for the decision in that case there would have been no lawsuit, as there is no ground whatever for asserting that there is anything about the deal that would invalidate the quitclaim deed; and nothing whatever to indicate bad faith on the part of the mortgagees. But for the decision in the Pigeon Case, all of the defendants could rely upon the rule of property established by this court; but the rights of the mortgagees do not rest upon the rule of property, but upon the quitclaim deed of plaintiff, voluntarily made by her with full knowledge of its contents, and for a recited consideration. Two of the mortgages were made before the quitclaim deed was executed, but the money was not paid out until the quitclaim deed was placed of record; and the other mortgage was made and the money paid out after the quitclaim deed was placed of record, and all of the instruments referred to were completed before the rule of property was changed by the Pigeon Case, supra. There is nothing to indicate anything but the best of faith on the part of the mortgagees, with no notice to them of bad faith on the part of the grantee. for none whatever seems to have existed. That being true, the rule laid down in Brooks et

al. v. Tucker et al., 83 Okla. 255, 201 Pac. 643, seems to apply, where it is said:

"The essential elements which constitute a bona fide purchaser are valuable consideration, the absence of notice, and the presence of good faith."

All these elements were present so far as the mortgagees were concerned. The trial court, in effect, found that the mortgagees in good faith and without notice of any defects in the mortgagor's title, parted with their money. The record amply supports such finding, and the judgment based thereon.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 27 Cyc. p. 1183. (2) 4 C. J. p. 1129 § 3122.