## FIDELITY & DEPOSIT CO. OF MARYLAND v. ABLES.

No. 21008.    Opinion Filed Dec. 1, 1931.

H. C. Thurman (Byrne A. Bowman, of counsel), for plaintiff in error.

C. C. Hatchett, for defendant in error.

HEFNER, J. On the 16th day of August, 1926, the State Highway Commission entered into a contract with W. M. Short and Joe E. Ables, partners, doing business under the firm name of Short & Ables, to grade approximately four miles of highway on State Highway No. 9 in Caddo county, Okla. The contractors were to receive for this work the sum of $27,787.40, and such an additional amount as was mentioned in the contract. The total amount due under the contract upon completion of the work amounted to the sum of $27,160.83. The Fidelity & Deposit Company of Maryland executed a surety bond for the contractors whereby they guaranteed the faithful performance of the contract and payment of all bills for material and labor used in connection with the work. Before the surety company executed the bond it requested indemnity, and in response to this request John T. Ables, brother of Joe Ables, delivered to it the following letter:

"Re Ables & Short, Contractors

"FAP No. 203 Sec. 'B' Caddo Co., Okla.

"Gentlemen:

"Reference this job awarded to Ables & Short, of Madill, Okla., and Joe E. Ables of this firm, my brother, and my verbal agreement with you that in case these contractors fail to complete this work, I would step in and complete.

"I understand that you want a letter of record on this agreement and to furnish the Fidelity & Deposit Company. Please accept this letter as an agreement, binding me to step in and finish the job should these contractors for any reason fail to complete.

"My brother, Joe E. Ables, is an experienced road contractor and his partner, Mr. W. M. Short, is a former State Highway Inspector, and both know their business, and they will go thru with this contract as agreed and as signed up for.

"Your etc.
"J. T. Ables."

Upon receipt of this letter the bond was executed and shortly thereafter the contractors commenced work and continued until August 24, 1927, at which time they defaulted and abandoned the contract. The surety company, after ascertaining that the contract had been abandoned, communicated with John T. Ables and demanded that he complete the work in accordance with his letter of indemnity and, after some negotiations between the parties, a contract to this effect was entered into by them. The contract in part provides:

"And in consideration thereof, the Fidelity & Deposit Company of Maryland, party of the second part, covenants and agrees to pay to the party of the first part for the work performed and material furnished on the basis of the unit prices as provided in the said original contract between Messrs. Short & Ables and the State Highway Commission of the state of Oklahoma, and agrees to make said payments only and when payments are made to the party of the second part by the State Highway Commission, and agrees to pay to the party of the first part any **retained percentage held back by the State Highway Commission** covering work performed and material furnished by **the party of the first part** when and as paid to the party of the second part by the State Highway Commission; and the party of the second part hereby covenants and agrees to indemnify the party of the first part against any penalties which may heretofore have accrued under the said contract or which may hereafter accrue as a result of failure of completion of project within the time specified in the original contract, or which may hereafter accrue up to the time fixed in this agreement for the completion of the project, but not for any penalties which may accrue by reason of failure of party of the first part to complete the contract within the time fixed in this agreement."

The work was thereafter completed by John T. Ables and, according to the final estimate of the engineer, there was due under the contract a balance in the sum of $5,675.89. This amount, less $1,100, which was claimed by the State Highway Commission as a penalty under the contract because of a delay in completing the work, was paid to the surety company. John T. Ables contended that the entire amount paid the surety company was due him under his contract with that company. The surety company contended that $700 of the penalty charged against it was properly chargeable to Ables, and further contended that there was included in the amount paid upon completion of the work the sum of $2,387.22 retained percentage held by the Highway Commission on work performed by the original contractors, and also contended that there was included the sum of $768.50, earned by the original contractors between the date of the last estimate and the date they abandoned the contract. That Ables had only earned in completing the work the sum of $2,520.70, and that, deducting from this sum the sum of $700, the amount of penalty chargeable against him, it owed him a balance only of $1,820.07, which amount it alleged it was ready and willing to pay. The surety company contended that under the terms of the contract between it and John T. Ables, Ables was not entitled to the retained percentage on the work done by the original contractors. Ables contended that the following phrase in the contract relative to retained percentage: **"covering work performed and material furnished by the party of the first part,"** was inserted by mutual mistake of the parties and that he was entitled to this retained percentage. The parties to the contract were unable to adjust their differences and John T. Ables, as plaintiff, brought this action against the surety company to reform the contract and to recover the sum of $5,675.89. The trial was to the court and resulted in a judgment in favor of plaintiff reforming the contract and for the entire amount claimed.

Defendant first contends that the evidence is insufficient to authorize a reformation of the contract. On this question the evidence on behalf of plaintiff establishes, in substance, the following facts: At the time plaintiff gave the letter of indemnity to the defendant it was agreed between him and Ben G. Hunter, defendant's agent, that in

the event of default on the part of the contractors and he was compelled to complete the work, he was to·be paid all money due the contractors at the time of default, including all retained percentage. After default on the part of the original contractors there was some correspondence between Ables and the surety company relative to completion of the work by plaintiff and the terms under which it should be completed. In the latter part of September, 1927, Mr. Thomas, who was a lawyer and a special adjuster for defendant and working in the office of Lloyd J. Mullen, general attorney for defendant, called on plaintiff at Madill, Okla., for the purpose of reaching an agreement with plaintiff under which the work could be completed. Some time thereafter a contract was prepared by Mr. Mullen and Mr. Thomas and presented to plaintiff at Madill for his signature. Plaintiff did not at that time sign the contract, but did so several days later at the office of Mr. Mullen in Oklahoma City. Plaintiff testified that it was agreed between him and Thomas that, as a part consideration for completing the work, he was to receive all money then due the original contractors, including the retained percentage. He further testified that when the contract was presented to him for signature by Mr. Thomas, he refused to sign it without consulting his lawyer. He was not satisfied that the contract definitely expressed the understanding between the parties relative to the retained percentage. Mr. Thomas stated that the agreement was that plaintiff was to receive such percentage and also stated that the contract so provided and urged its immediate execution. Plaintiff and Thomas then called at the office of Mr. Hatchett at Durant, plaintiff's lawyer, for the purpose of obtaining his opinion as to whether under the contract as written, plaintiff could collect the retained percentage due the original contractors. Mr. Hatchett was at that time out of the city and plaintiff urged that the execution of the contract be delayed until such time as he could consult Mr. Hatchett. Mr. Thomas, because of the penalty accumulating on account of delay, urged plaintiff to consult some other lawyer in order that the contract might be signed and the work commenced. Plaintiff then consulted Judge Ferguson, a partner of Mr. Hatchett. Judge Ferguson stated that not being familiar with the history of the transaction, he was unable to give an intelligent opinion. He, however, inquired of plaintiff the particular feature of the contract upon which he desired advice. Plaintiff then informed Judge Ferguson that the agreement between him and Mr. Thomas was that upon taking over the contract and completing the work he was to have the retained percentage due the original contractors on work performed by them and desired to know whether the contract as drawn was sufficiently definite as to express this intent. Mr. Thomas then, in the presence and hearing of Judge Ferguson, at that time also stated that the agreement was as contended by plaintiff and that in his opinion the contract so provided and could be given no other construction. Judge Ferguson then stated that he agreed with the construction placed upon the contract by Mr. Thomas and further stated that, inasmuch as there appeared to be no dispute in regard to the proper construction to be placed upon the contract, he would advise plaintiff to sign the same. Judge Ferguson corroborated plaintiff in this respect and specifically testified that Mr. Thomas stated that the agreement was as contended by plaintiff, and that in his opinion the contract as drawn was capable of no other construction than that plaintiff was to have and receive the retained percentage due the original contractors.

Plaintiff further testified that thereafter he and Thomas went to the office of Mullen in Oklahoma City and that Thomas there explained to Mullen the agreement he had made with plaintiff and their understanding as to the construction of the contract, and that Mullen agreed that the contract meant that plaintiff was to receive the retained percentage due the original contractors and that he then signed the contract.

Plaintiff further testified that after the work was completed he had a conversation with Mullen in which Mullen stated that he, plaintiff, was entitled to receive this retained percentage. Mullen, by his evidence, contradicted the evidence of plaintiff, but neither Hunter nor Thomas denied the statements attributed to them. We think the evidence sufficient to warrant reformation of the contract.

In the case of Bagby v. Martin, 118 Okla. 244, 247 P. 404, this court said:

"If parties, who mutually agree on the terms of a contract, choose and use legal phrases and terms in the contract which, in legal effect, express a meaning different from that agreed upon, a court of equity will grant proper relief in the premises."

In 23 R. C. L. p. 326, the following rule is announced:

"In an attempt to harmonize the mass of conflicting cases, the rule has been laid down that when the mistake is as to the legal effect of what has really been agreed on, it cannot be corrected; but where the

mistake is in the legal meaning or effect of certain words employed in writing out the contract, equity will grant relief, for the writing then does not express what the parties intended."

We think the evidence establishes that the real agreement between the parties was that plaintiff, upon completion of the work, was to receive the retained percentage due the original contractors. The real agreement was entered into between plaintiff and Mr. Thomas and, under plaintiff's evidence, this agreement was understood by Mr. Mullen, general attorney for defendant, and ratified by him. Under the evidence there was a mutual mistake of the parties in the language used by them to express their real meaning. A court of equity, therefore, has jurisdiction to reform the contract.

It is next contended that the court erred in charging defendant with the entire penalty for delay in completing the work. It is defendant's contention that plaintiff should have been charged with $700 of this penalty. The State Highway Commission, upon completion of the work, deducted from the amount due the sum of $1,100 as penalty and remitted the balance to defendant. The contract between the State Highway Commission and the original contractors provided that, in the event the work was not completed within the time provided by the contract, the contractors should be liable to a penalty at the rate of $10 per day for each day completion thereof was delayed. At the time the contractors defaulted and abandoned the contract a penalty had accumulated against them in a sum in excess of $2,300. The contract between plaintiff and defendant provided that plaintiff should complete the work within 40 working days and for every day completion thereof was delayed in excess of 40 days plaintiff should be liable for a penalty of $10 per day, and the contract further provided that defendant should be liable for and settle for all penalties accumulated prior to the time plaintiff was to commence work under the contract. It is agreed that under the contract plaintiff was chargeable with a penalty of $700 because of delay in completing the work. Plaintiff contends and his evidence establishes, that after the work was completed Mr. Mullen, on behalf of defendant, entered into an agreement with him whereby he employed him to appear before the Highway Commission and endeavor to obtain a reduction on the penalty and agreed that in the event he succeeded in reducing the penalty one-half or more, the company, as compensation for this service, would pay all penalties and relieve him from all liability therefor. Plaintiff did appear before the

Highway Commission and succeeded in reducing the penalty from $2,300 to $1,100. Plaintiff's evidence in his respect is corroborated by Mr. Hunter, who is an employee and representative of the defendant.

Defendant objected to the introduction of this evidence on the ground that it tended to vary and contradict the terms of the written contract and that a written contract could only be changed or modified by a contract in writing or by a subsequent executed oral agreement. We do not think the objection well taken. The evidence admitted does not tend to vary or contradict the terms of the written contract, nor does it in any manner operate to change or modify the original contract. It simply shows that after completion of the work under the written contract defendant employed plaintiff to perform additional and different services and agreed to pay him as compensation therefor an amount equal to the penalty assessed against him under the contract. The evidence was properly admitted, and in our opinion is sufficient to sustain the judgment assessing the entire penalty against defendant.

The evidence discloses that between the date of the last estimate and the date the contract was abandoned by the original contractors they had done a certain amount of work for which they received no estimate. The court also granted plaintiff judgment for this amount. In this respect we think the court erred. The contract does not provide that plaintiff should be paid this amount. It is true plaintiff testified that the real agreement was that upon completion of the work the same was to be paid to him. This provision, however, is not contained in the contract and the evidence is insufficient to establish that it was omitted because of mutual mistake of the parties. Defendant, under the terms of its bond, is subrogated to the rights of the original contractors, and there being no contract to the contrary, it is, as against plaintiff, entitled to the money due on this estimate. The evidence is not clear as to the amount earned by the original contractors during this period. The trial court found this amount to be $350. In our opinion, there is evidence sufficient to sustain this finding.

Plaintiff was permitted, over defendant's objections, to testify that it cost him $6,000 to complete the work. This ruling is assigned as error. We do not think this evidence is material. It might have been properly excluded under defendant's objection. Its admission, however, in our opinion, could in no manner have prejudiced defendant and

does not, therefore, constitute reversible error.

The contention of defendant that the court erred in overruling its motion to strike certain portions of plaintiff's amended petition has been disposed of in discussing the assignment relative to the sufficiency of the evidence to sustain the judgment reforming the contract.

The judgment is modified by reducing the amount of recovery from $5,675.89 to $5,325.89, and as so modified, is affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. CULLISON, J., absent.

Note.—See under (1) annotation in 28 L. R. A. (N. S.) 792; 6 R. C. L. 630; 23 R. C. L. 326.