**WHITTAKER v. WHITE et al.**

No. 23589.  Oct. 23, 1934.

J. B. Dudley, for plaintiff in error.

Stanard & Carey, for defendants in error.

SWINDALL, J. This is an equitable action brought by the defendant in error Myrtle B. White, as plaintiff in the court below, to reform a deed wherein she was grantor, and the plaintiff in error, T. W. Whittaker, defendant below, was grantee. Both parties in their briefs have chosen to designate the parties as they were designated in the trial court, and they will be so referred to herein, the plaintiff in error as defendant and defendant in error as plaintiff. The defendant in error D. B. Ellis was brought into the lower court on the application of defendant and appeared there as a defendant, but whatever right he has was derived from and is dependent upon the rights of plaintiff, and there is no diversity of interest between him and the plaintiff: they were represented by the same counsel, filed a joint brief, and where the brief is referred to, it will be referred to as plaintiff's brief.

It appears that in the summer of 1927 the plaintiff was the owner of approximately 600 acres of land in Pottawatomie county, and, desiring to sell the same, entered negotiations with the defendant, and on July 9, 1927, the parties signed a written contract for the sale of the land and pursuant thereto, on September 9, 1927, a deed was executed by plaintiff and delivered to defendant, and he paid the purchase price therefor. Plaintiff, by a clause in the deed, retained one-half of the oil and mineral rights in the north half of the southeast quarter of section twenty-two (22), township eleven (11), north, range two (2) east, being eighty (80) acres of land sold to defendant and the reservation being in substantial compliance with the terms of the sale contract. It appears that about eight months before the contract of sale was entered into, the plaintiff had conveyed to one J. C. Miller one-half of the oil and gas rights in and under the south half of the northeast quarter and the northeast quarter of the northwest quarter of section twenty-two (22), the same being also a part of the land covered by the deed to defendant, but neither the deed nor contract of sale makes any reference to the oil and gas rights theretofore conveyed to Miller, and that is the principal cause of controversy in this case. Plaintiff in her original petition alleged that the contract of sale was oral, and that it was the distinct understanding that the deed would make reservations and

exceptions of the interest sold to Miller; that the defendant thereafter prepared the deed and presented it to her; that it did not contain such reservation as was intended by the parties; that she thereupon called attention to the omission, and defendant told her that it was not necessary to make reference thereto in the deed; that plaintiff, relying on the defendant's statement, executed and delivered the deed to defendant; that, since the delivery of the deed, plaintiff has repurchased from the said J. C. Miller a portion of the oil and gas rights mentioned, and her title therein is now clouded by said deed to defendant.

At the trial it developed that the written contract of sale was executed by the parties, and plaintiff was permitted to amend to ask for a reformation of the contract as well as the deed, so that both would show as exempted from the grant the oil and gas rights formerly conveyed to Miller.

The defendant admitted the execution of the deed by plaintiff and that the oil and gas interest sold to Miller was not owned by plaintiff at the time the deed was executed, but denied the other allegations of the petition. Defendant also, by way of cross-petition, alleges a breach of warranty of the covenants in the deed; that plaintiff, since the execution of the deed, has acquired title to the oil and gas rights of J. C. Miller in 80 acres of the 120 acres owned by Miller at the time of the execution of the deed from plaintiff to defendant, and that by reason thereof said rights in said 80 acres accrued to the benefit of defendant by virtue of the covenants of warranty in said deed; that plaintiff, since the reconveyance of these oil and gas rights to her from Miller, had conveyed an undivided one-eighth of the oil, gas and mineral rights in and under said 80 acres, to wit, the east half of the northwest quarter of section twenty-two (22), township eleven (11) north, range two (2) east, to D. B. Ellis; that conveyance was duly recorded and cast a cloud on the title of defendant, and defendant asks, as a matter of equity, that the court direct plaintiff to convey to defendant such portion of the oil and gas rights in said land reserved by plaintiff as will compensate defendant for the loss of such rights which were outstanding at the time of the execution of deed to defendant by plaintiff, and to which defendant is entitled by reason of plaintiff's covenants of warranty in said deed. Defendant further alleged a breach of warranty of the covenants of said deed

by reason of a prior outstanding deed executed by plaintiff's husband prior to his death and while he was the owner thereof, conveying to one Fannie Alford a roadway across a part of the land approximately 20 feet wide and a quarter of a mile long. Defendant asks damages for the value of this tract and such equitable relief as he may be entitled to.

D. B. Ellis filed answer and cross-petition setting up the conveyance from plaintiff to him of an undivided one-eighth interest in the oil and gas on 80 acres of the land and claiming title to such rights.

The court found generally in favor of plaintiff and against defendant, and found specifically that the contract and deed did not express the real agreement and intention of the parties, and that same should be reformed so as to except from the grant the undivided one-half interest of the minerals in and under the 120 acres, which said mineral rights were owned by J. C. Miller at the time of the execution and delivery of the sale contract and deed; that the title to said mineral rights be quieted in plaintiff, Myrtle B. White, and D. B. Ellis, in accordance with their interest as claimed; that the deed and contract does not express the real agreement of the plaintiff and defedant in that they do not except from the grant the roadway theretofore conveyed to Fannie Alford, and that the deed and contract be reformed "so as to remedy said error"; and that plaintiff has not breached her warranty to defendant. The court rendered judgment in accordance with these findings, and defendant appeals to this court.

Counsel for plaintiff expressly states in his brief that fraud is not charged. Plaintiff relies entirely on mutual mistake of the parties to justify a reformation of the contract and deed. It is the contention of defendant that the court erred in admitting parol evidence to establish the mutual mistake of the parties. We cannot agree with this contention. It has long been established that in suits to reform written instruments equity will relieve against mutual mistake in such instruments upon satisfactory parol proof of such mistake. Gillespie v. Moon, 2 Johns. Ch. (N. Y.) 585, 7 Am. Dec. 559; Forristal v. Security Ins. Co., 136 Kan. 73, 12 P. (2d) 790; Farmers & Merchants Nat. Bank v. Hoyt, 29 Okla. 772, 120 P. 264.

It is contended in defendant's brief that the evidence is not sufficient to establish the mutual mistake by the parties, and the question is asked: "What did plaintiff and defendant agree to do about the Miller royalty grant which is omitted from the deed?" To answer this question we must look to the testimony. We have the testimony of the plaintiff, Mrs. White, that she did not intend to convey to the defendant, Whittaker, the mineral rights which she had prior thereto conveyed to J. C. Miller, and we think there is ample proof to justify a finding that the defendant, Whittaker, knew that a conveyance of these mineral rights had been made to Miller prior to the date of defendant's contract and deed. It appears from Mrs. White's testimony that the Miller outstanding mineral rights were mentioned on three or four different occasions, at least once prior to the execution of the contract, in regard to which occasion she testified as follows:

"Q. Prior to the execution of the contract what statements, if any, did you make concerning this Miller deed outstanding? A. I just told Mr. Whittaker I had sold this to Mr. Miller. Q. What did Mr. Whittaker say? A. He said, 'I don't see that makes any difference; you have sold it.' I don't remember exactly what he said; it was to that effect, I had already sold it. There wasn't anything said about it, but when we were there making the contract I asked if it was necessary to mention it in the contract. He said, 'No', it was sold, and Mr. Whittaker mentioned it, and Mr. Ellis didn't know if it was necessary to mention it, and he said, 'No, it is sold; I don't see it is.'"

Referring to the time the deed was signed, she testified:

"Q. At the time you signed this deed covering these lands, what conversation was had between you and Mr. Whittaker with reference to this Miller deal? A. I asked if it would be necessary to put that in the deed and he said no, because it wasn't mentioned; he said it didn't belong to me and it wouldn't be necessary to mention it, and I did describe the land I wanted to keep in the other deed."

Again, referring to the time the deed was signed, she said:

"Q. I say, what did you say, if anything, to Mr. Whittaker with reference to reserving or mentioning the land you had conveyed to Miller, at the time you executed the warranty deed? A. I didn't say anything, except I just told him I had sold that part. I wanted him to understand I had sold that much of the royalty, but that was all the conversation. There wasn't very much conversation about it, except I just told him. Q. He said it wasn't necessary? A. He said it wasn't necessary to mention in the deed because it wasn't mine. Q. Did you believe

and rely on those statements of Mr. Whittaker when you gave this deed? A. I certainly did. I didn't even have it mentioned."

The defendant denied these conversations and denied any knowledge of the outstanding Miller mineral rights, but Miller testified that he had personally told defendant of his rights, corroborating plaintiff to that extent, and defendant's attorney, who appears as his counsel in this case, was called as a witness by the plaintiff and testified that he wrote a written opinion on the title after examining the abstracts and therein fully set out that Mrs. White had conveyed to J. C. Miller one-half interest in the minerals under one hundred twenty acres of the land and also that he had reported to Mr. Whittaker orally and "especially called his attention there was some royalty conveyed" and states that defendant told him "that was all right, that she was reserving some royalty." Defendant insists that he had in mind only the reservation of the mineral rights under eighty acres which plaintiff actually described in the contract and deed. The contract was not recorded and the deed had not been drawn at that time, so neither could have then been included in the abstract, and defendant's attorney testified that he had seen neither the deed nor the contract. The other witnesses who, according to Mrs. White's testimony, were present at some of these conversations, testified in substance that they did not remember such conversation or any mention of the Miller outstanding mineral right on such occasions.

If we accept the testimony of the plaintiff as true, we cannot escape the conclusion that plaintiff and defendant agreed that plaintiff would convey and defendant would accept title to the six hundred acres of land, minus one-half the mineral rights under one hundred twenty acres theretofore conveyed to Miller, and minus one-half the mineral rights under eighty acres reserved by plaintiff for herself.

We cannot assume that defendant was advising plaintiff to execute the deed to include an interest she did not own, advising her that it was unnecessary to mention her lack of ownership, and was standing waiting until she executed it to charge her with a breach of warranty. If he knowingly advised her into such an error in order that he might take advantage of it, his actions would constitute fraud. According to her testimony, when asked as to the necessity of mentioning the Miller outstanding mineral

rights, defendant said: "I don't see that it makes any difference; you have sold it." As plaintiff puts it on another occasion, "He said no, because it wasn't mentioned; he said it didn't belong to me and it wouldn't be necessary to mention it." And again she testified, "He said it wasn't necessary to mention in the deed because it wasn't mine."

As neither party claims any additional reason or other explanation for her including in the conveyance interests which both agree she did not own, it appears to a moral certainty that defendant was agreeing to accept the title minus the outstanding Miller interest, and that the parties were mutually mistaken in choosing and using legal phrases and terms in the contract and deed which, in legal effect, expressed a meaning different from that agreed upon.

If defendant acted in good faith in advising plaintiff to execute the contract and deed without mention or reservation of the outstanding interest, honestly thinking that she would not be injured thereby, then it would be inequitable for him to be permitted to take advantage of their mutual mistake at this time. The defendant, however, contends that if there was a mutual mistake, it was a mistake of law and is no ground for reformation.

The rule in regard to mistakes of law was accurately stated by Chief Justice Riley in the case of Newbern v. Gould et al., 162 Okla. 82, 19 P. (2d) 157, as follows:

"It seems well settled in this jurisdiction that a mere mistake of law, not accompanied by other circumstances demanding equitable relief, constitutes no ground for reformation of a deed based upon such mistake. Barnett v. Douglas, 102 Okla. 85, 226 P. 1035; Campbell v. Newman, 51 Okla. 121, 151 P. 602. But the mistake here involved cannot be said to be a mere mistake of law against which equity will not afford a remedy by reformation. Under a sufficient showing of mutual mistake, or mistake on one side and fraud or inequitable conduct on the other, if by such mistake an estate or interest intended to be conveyed is enlarged, curtailed, or vests in a different manner from what the parties intended, the deed will be corrected and the omission of a reservation will be righted."

In that case the agreement was that a reservation of oil and gas rights was to be accomplished by a reconveyance thereof in a separate instrument, but the separate instrument failed to convey such right to the extent which had been agreed upon. The

trial court entered a decree reforming the conveyance as prayed for and this court affirmed the judgment. The case of Rhoads v. Rhoads, 105 Okla. 79, 231 P. 282, is cited by defendant, and while the rule therein is not definitely stated, we think the opinion is in harmony with the rule above stated.

In the case of Gross Construction Company v. Hales et al., 37 Okla. 131, 129 P. 28, it was said:

"Where, by a mistake as to the effect of the language used, a writing does not truly express the contract, equity will relieve."

This court has also held that:

"If parties, who mutually agree on the terms of a contract, choose and use legal phrases and terms in the contract which in legal effect express a meaning different from that agreed upon, a court of equity will grant proper relief in the premises." Bagby et al. v. Martin, 118 Okla. 244, 247 P. 404; Fidelity & Deposit Company of Maryland v. Ables, 153 Okla. 278, 5 P. (2d) 740.

The facts in the case under consideration bring it within this rule. The parties agreed that the 600 acres of land should be transferred from the plaintiff to the defendant minus certain mineral rights. The language they chose and used had the legal effect of transferring the mineral rights which they intended to except from the conveyance, and equity will reform the contract and deed to make it express the real agreement of the parties.

Defendant contends that all the evidence introduced by plaintiff to prove knowledge by the defendant as to former conveyance of the oil and gas rights to Miller was incompetent, irrelevant and immaterial on the theory that knowledge would neither justify reformation or relieve the plaintiff from her liability in her warranty of title, and in support of that contention he cites Joiner et al. v. Ardmore Loan & Trust Co., 33 Okla. 268, 124 P. 1073. We think their contention sound as to the incompetency of this evidence to relieve from liability for breach of warranty, but it has no application to suits to reform a contract or deed on account of mutual mistake, and there was no attempt to apply it in such a manner in the cases cited. This distinction is referred to and definitely recognized in two of the cases cited by defendant, Sales et al. v. Duncan et al. (Ky.) 256 S. W. 17, and Foxwell v. Justice (Ky.) 231 S. W. 509. In the body of the opinion in Sales et al. v. Duncan et al., supra, it is said:

"The issue in this case is upon a covenant of warranty, and it is to be distinguished from an issue of fraud or mistake in an attempt to cancel, rescind or reform a written instrument."

The general rule as to the admissibility of evidence in suits for the reformation of instruments is laid down in 53 C. J. 1027, as follows:

"Where, however, the proper allegations are made, anything which shows the actual contract of the parties is material, and any evidence which goes to show the real intention of the parties is admissible, whether it be by way of conduct, or declaration of the parties or documentary in nature. All that occurred in relation thereto just before or at the time of the execution of the instrument, in other words, the res gestae of the transaction, is admissible under the issue to determine the question of mutual mistake, and the right of reformation."

Plaintiff testified that at the very time of making the contract and also of executing the deed, the outstanding Miller right was called to the attention of defendant, and the conversation of the parties is related. This testimony was vital and important in ascertaining the intention and agreement of the parties. Under such circumstances and upon the issue of mutual mistake, there is no doubt as to its admissibility.

There is no relaxation of the rule insisted on by defendant, as laid down in the case of Home Ins. Co. v. Akers, 96 Okla. 232, 221 P. 493, and many other cases, as follows:

"In order to justify a reformation of a contract, the evidence must be full, clear, unequivocal and convincing as to the mistake and its mutuality. Mere preponderance of the evidence is not enough. The proof must establish the facts to a moral certainty, and take the case out of the range of reasonable controversy."

We think the evidence is sufficient to support the judgment reforming the deed and contract so as to except from the grant the oil and gas rights conveyed to J. C. Miller prior to the date of the contract and deed here involved, but there is no evidence of any agreement by the parties to exempt from the grant the roadway conveyed to Fannie Alford on the 6th day of February, 1912.

The judgment is, therefore, affirmed as to the reformation of the contract of sale and deed so as to except from the grant such oil and gas rights in and under the south half of the northwest quarter and the northeast quarter of the northwest quarter of

section twenty-two (22), township eleven (11) north, range two (2) east, in Pottawatomie county, Okla., as were granted to J. C. Miller by Myrtle B. White, by the terms of the oil and gas grant dated November 11, 1926, and of record in the office of the county clerk of Pottawatomie county, Okla., in book 66, at page 288-9, and quieting title in plaintiff and D. B. Ellis to the extent of their respective interests in said oil and gas rights, as shown by their pleadings; and reversed as to the roadway, and as to that issue the trial court is directed to grant defendant a new trial on his cross-petition.

RILEY, C. J., CULLISON, V. C. J., and McNEILL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur.