## HIGGINS et al. v. CLASSEN.

No. 22641.    Jan. 28. 1936.

Rehearing Denied March 3, 1936.

Libby & Sherwin, Suits & Disney, Fred Ptak, and Chas. H. Garnett, for plaintiffs in error.

Keaton, Wells, Johnston & Barnes, for defendant in error.

OSBORN, V. C. J. This is an action in equity instituted in the district court of Oklahoma county by R. W. Higgins, Jr., and a number of other persons, hereinafter referred to as plaintiffs, against Ella D. Classen, hereinafter referred to as defendant. In this action it is sought to reform a deed executed by R. W. Higgins to Anton H. Classen. The trial court found in favor of defendant, and plaintiffs have appealed.

Plaintiffs are the heirs of R. W. Higgins, deceased. Defendant is the widow, sole legatee and devisee of Anton H. Classen, deceased.

The facts are that in April, 1889, R. W. Higgins, Sr., and Susan A. Higgins, his wife, entered upon and filed homestead entry upon the S. W. ¼ of section 33, twp. 12 N.. R. 3 W.. of the Indian Meridian. Thereafter and about the year 1896, R. W. Higgins received a patent from the United States conveying to him the full fee title to said real estate. On December 27, 1899, R. W. Higgins and wife conveyed by quitclaim deed to the board of county commissioners of Oklahoma county a strip of

ground 100 feet wide extending east and west, across the above-described tract of land for use as a public highway and for street purposes. Said strip of land has since that time constituted a part of Main street of Oklahoma City. On May 12, 1900, the Oklahoma City Terminal Railroad Company condemned a portion of the above described land and thereby procured an easement for a right of way for its use for railroad purposes. Damages were assessed and paid, and the company went into possession of that portion of the land which was condemned and erected and constructed railroad tracks thereon and continued to use the same for railroad purposes until the year 1929

Some time prior to January 2, 1901, there was formed by some citizens in Oklahoma City a syndicate for the purpose of acquiring property and subdividing the same into lots and blocks, thereby creating certain additions to Oklahoma City. Anton H. Classen was a member of the syndicate. Certain negotiations were entered into with R. W. Higgins for the purchase of a portion of the above-mentioned quarter section of land, being that portion lying south of the tracks of the Chicago, Rock Island & Pacific Railway Company. The negotiations culminated in the execution of a deed from R. W. Higgins and wife to Classen of all that portion of the above-mentioned lands lying south of the right of way of the Chicago, Rock Island & Pacific Railway Company. The property conveyed was described by metes and bounds, as to the outside boundary line thereof. The deed contained a recital that the land conveyed consisted of "eighty-four (84) acres more or less." No mention whatever was made in said deed of the conveyance theretofore made by quitclaim deed to Oklahoma county for highway and street purposes, nor was the easement of the Oklahoma City Terminal Railroad Company, and its occupancy of a portion of said property, mentioned or excepted from the terms of the warranty. The syndicate paid the consideration for the purchase of the land. but title was taken in the name of Classen, who at that time was a single man, to facilitate the execution of deeds to the prospective purchasers of lots. It was also a part of the transaction that Higgins was to reserve his home and some adjacent lots. but, as a matter of convenience in executing the conveyance, all of the tract was conveyed to Classen and thereafter Classen conveyed back to Higgins his home and the adjacent lots agreed upon in two separate conveyances, the recited consideration being $3,150.

This action was instituted on November 5, 1929, after it was learned that there would be an abandonment of the railway right of way property by the St. Louis & San Francisco Railway Company, the successor of the Oklahoma City Terminal Railroad Company. It is the contention of plaintiffs that it was never the intention of the grantors in the deed to Classen to convey any interest in the property which had theretofore been condemned for railroad purposes and the property conveyed by quitclaim deed for highway and street purposes, and that the deed should be reformed by reserving and excepting said property to conform to the intention of the parties

At the request of the parties the trial court made and entered special findings of fact in which he found the facts as hereinabove stated, and in addition thereto found:

"4. That the grantors and the grantee in said deed from Robert W. Higgins and Susan A. Higgins to Anton H. Classen both well knew at the time said deed was executed and delivered that the ground within the boundaries of said street and highway and within the boundaries of said railroad right of way had been conveyed, taken, appropriated and put in use as above set forth herein, but that the said grantors did not have any affirmative intention to exclude said strips of ground from the description of the land as contained in said deed, and the grantee did not have any affirmative intention to include the same within such description, and that the said grantors executed said deed and the said grantee received the same without any intention as to whether the said ground within the boundaries of said street and highway and said railroad right of way should be included in or excluded from the description of the real estate conveyed by said deed, but the same was a matter of indifference to them."

The court concluded as a matter of law that plaintiffs were not entitled to reformation of the deed, and rendered judgment for defendant, and it is from this judgment that plaintiffs have appealed herein.

Since this is an equitable proceeding, we will review the evidence to determine whether or not the judgment of the trial court is contrary to the clear weight thereof.

The ruling and guiding principles applicable to this controversy were stated by this court in the recent case of Whittaker v. White, 169 Okla. 336, 37 P. (2d) 247, a case somewhat analogous from the standpoint of facts. Therein it is said:

"In a suit to reform a deed and contract on account of mutual mistake, by which interests in real estate not owned by grantor were erroneously included in the grant, it is competent to show grantee's knowledge of grantor's lack of ownership of such interests at the time of the execution and delivery of the deed and contract, and also the conduct, declarations, and statements of the parties at the time of such execution and delivery for the purpose of ascertaining the intention and real agreement of the parties.

"In order to justify a reformation of a contract, the evidence must be full, clear, unequivocal and convincing as to the mistake and its mutuality. Mere preponderance of the evidence is not enough. The proof must establish the facts to a moral certainty, and take the case out of the range of reasonable controversy."

See, also, Davis v. Universal Ins. Co., 169 Okla. 593, 38 P. (2d) 932; American Life Ins. Co. v. Ratcliff, 168 Okla. 439, 33 P. (2d) 634; Hendrix v. Rinehart, 167 Okla. 621, 31 P. (2d) 113; Wilson v. Olsen, 167 Okla. 527, 30 P. (2d) 710.

In the outset it may be said that the evidence is unmistakable that the deed does not express the true intention of the parties. It is shown that the grantee and those mutually interested with him were fully advised as to the previous grant to the county commissioners of that portion of the land which had been deeded for highway and street purposes, and as to the prior condemnation proceedings. The railroad was in possession of the right of way and the public was using the street at the time the transaction between Higgins and Classen was consummated. As heretofore stated, the grant to the board of commissioners was by quitclaim deed. In so far as that part of the land is concerned, there was no reversionary interest. Since the deed attempted to include that land which had been previously granted to the county commissioners, it would necessarily follow that the deed did not and could not express the true intention of the contracting parties. We are therefore justified in inquiring into the facts and circumstances surrounding the transaction to ascertain the true intention of the parties at the time the deed was executed and delivered.

Plaintiffs called as a witness Warren E. Moore, who qualified as a surveyor and civil engineer, and testified that a short time prior to the trial of the cause, at the request of plaintiffs, he made a survey of the property covered by the description in the deed and that said tract contained 97.366 acres; that he also surveyed the property included in the quitclaim deed to the county commissioners and the property condemned by the railroad company and found that said right of way and street covered 12.518 acres; that excluding the last-described property from the tract covered by the description in the deed, there was left 84.848 acres.

Mrs. Susan A. Higgins, the wife of R. W. Higgins, was called for plaintiffs and testified that at the time she joined in the execution of the deed to Classen it was not the intention of the grantors to grant either the railroad right of way or the property previously granted for highway and street purposes, as they considered that they had already been granted.

E. E. Chaffin, called as a witness for plaintiffs, testified that he was one of the members of the syndicate that purchased the land from Higgins and that it was his remembrance that the total purchase price was $42,000, at the rate of $500 per acre. He further testified that no member of the syndicate had ever made any claim against Higgins for breach of covenant or warranty in the deed because the deed included the land in Main street and the land in the railroad right of way.

J. M. Owen was called as a witness in behalf of defendant and testified that his firm was one of the members of the syndicate; that he personally made the deal with Higgins; that it was understood with Higgins that the syndicate bought everything that he owned south of the Rock Island Railroad and that Higgins reserved his home, and that it was a part of the transaction that they should deed it back to him after the property had been platted. He further testified that in preparing the deed they took the word of Higgins that the property involved consisted of 84 acres more or less; that the street had already been open and was in use and that the railroad company was occupying the right of way. He further testified that the purchase price of the property was $39,000. The record shows, however, that when the lots were deeded back to Higgins as per the agreement, the deed recited a consideration of $3,150. The witness further testified:

"Q. Did you or those associated with you, to your knowledge, ever claim any damages for breach of the covenant or warranty because of the fact the railroad used this for

30 years and Main street is still in use? A. No, sir. It was already there, and we bought it subject to that. Q. And did you not regard the fact that those parts had been conveyed or were in use by other persons as any breach of the covenants of warranty in the deed? A. It was never brought up by Mr. Higgins or anybody, about what the future of that right of way would be, because, naturally it was supposed to be there always, just like— Q. You knew it was there? A. Yes. Q. And expected it to be there? A. Yes."

From the further testimony of this witness it appears that the parties were confronted with some difficulty in preparing a description of the property to be conveyed; that by including the entire tract in the deed and reconveying to Higgins the property reserved by him, they adopted what he termed the "easiest" way. He further testified that the grantees required that Higgins be joined in the platting in order to foreclose any claim he might have to any of the property conveyed by the deed.

The parties in their briefs have presented numerous legal propositions and have cited in support of the various propositions a great array of authorities, but due to the unusual fact situation presented in this case, said authorities are not applicable. Since it is apparent that the deed does not truly express the intention of the parties, the issue herein is to be determined by ascertaining, if possible, the true intention of the parties at the time the deed was executed. There is no occasion in this case for relaxing the rule announced in the case of Whittaker v. White, supra, requiring that the intention of the parties must be established to a moral certainty by full, clear, unequivocal, and convincing evidence

The finding of the trial court was that the question of including the street and right of way within the grant was a matter of indifference to the contracting parties. The trial court concluded, however, that plaintiffs were not entitled to recover. However, its finding that there was no intention on the part of Higgins to convey, and no intention on the part of the grantee, Classen, to receive, the title to the strips of land above mentioned is a finding tantamount to a determination that by mistake the deed did not express the true intention of the parties and said mistake was mutual. Neither the grantors nor the grantee contemplated or anticipated at the time of said conveyance that either the street or the railroad property would be abandoned. All of

the parties contracted with each other on the basis of this situation.

By an examination of all the surrounding facts and circumstances, we find no difficulty in determining what we conceive to be the true intention of the parties. It is helpful to consider the purpose for which this property was being acquired. As heretofore stated, it was the purpose of the syndicate to immediately create a subdivision, to plat the property into lots and blocks and place the same upon the market. In other words, it was not anticipated by the grantee or those interested with him that they would own the property for any considerable length of time. The deed provided for conveyance of 84 acres, more or less. Although there is a slight conflict in the evidence, or rather a lack of positive evidence to the point, we are justified in finding that the grantee and his associates paid for approximately 84 acres. The evidence is unmistakable that in order to arrive at the approximate number of acres specified in the deed and paid for by the grantee, the street and railroad right of way were excluded.

Since the grantee and his associates were interested only in the property which was subject to their immediate possession, it would be straining a point to say that it was their intention to acquire a seemingly remote reversionary interest in other property, which they evidently anticipated would never be fit for their purpose. The evidence is unmistakable that the grantor intended to convey approximately 84 acres and that it was the intention of both parties that the grantee should pay for approximately 84 acres. If the rights of the parties were determinable by a construction of the deed itself, a problem of considerable difficulty would be presented. But since such rights are determinable by the intention of the parties, we are driven irresistibly to the conclusion that it was not intended that the reversionary interest in the property condemned for right of way purposes should pass by the deed to Classen, but should remain in the grantor, Higgins, and that the judgment of the trial court is contrary to the clear weight of the evidence

Defendant further contends that on account of the long delay of plaintiffs in asserting their interest in the property herein involved, they are guilty of laches and are now barred from claiming or asserting any right or interest in said property. The general rule applicable in this jurisdiction is stated in the case of American First Na-

tional Bank v. Peterson, 169 Okla. 588, 38 P. (2d) 957, as follows:

"The question of whether a claim is barred by laches must be determined by the facts and circumstances in each case and according to right and justice. Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another."

See, also, Moore v. Moore, 167 Okla. 365, 29 P. (2d) 961; Kirkpatrick v. Baker, 135 Okla. 142, 276 P. 193; Cassidy v. Gould, 86 Okla. 217, 208 P. 780; Indian Land & Trust Co. v. Owen, 63 Okla. 127, 162 P. 818. It has also been held that where the facts in the case are such as appeal to the conscience of a court of equity, laches of the plaintiff does not necessarily bar a recovery. City of Muskogee v. Nicholson, 69 Okla. 273, 171 P. 1102.

In this case it is shown that the railroad company had been in exclusive possession of the property since the execution of the deed to defendant's predecessor. It does not appear that any of the interested parties have changed their positions since the delivery of the original deed; the right of no innocent purchaser has intervened; no question of improvement of the property through the effort of the grantee, his successor, or associates is involved; the evidence wholly fails to show any prejudice or damage resulting to defendant on account of the failure of plaintiffs to assert their right at an earlier date. The claims of plaintiffs are not barred by laches.

The judgment of the trial court is reversed and the cause remanded, with directions to enter a judgment in favor of plaintiffs in conformity with the views herein expressed.

McNEILL, C. J., and RILEY, CORN, and GIBSON, JJ., concur.