## OKLAHOMA CITY FEDERAL SAVINGS & LOAN ASS'N v. CLIFTON et al.

No. 28031.   June 7, 1938.

Everest & Halley, for plaintiff in error.

Williams, Cowan & Benedum, R. F. Barry, and J. D. Lydick, for defendants in error.

GIBSON, J.   The trial court reformed a deed given by Daisy C. Clifton and Dr. G. M. Clifton, her husband, to the Oklahoma City Federal Savings & Loan Association, so as to give Dr. Clifton an easement over and right to use a stairway and alleyway between his building in Norman and an adjoining building sold by his wife to the loan association.   The buildings are so constructed that from the front they present the appearance of one building with the stairway practically in the center, leading to the second floor.   To the west on the second floor, in Dr. Clifton's building, is a dance hall; to the east on the second floor in the association's building is an apartment.   A stairway from one of the downstairs storerooms leads to the dance hall, but on account of tenants in a downstairs room Dr. Clifton decided to construct a doorway from the dance hall to the stairway on the east, over which he claims the easement.   When he started construction this suit to enjoin him resulted.   He answered with his petition for reformation. The association lost and appeals.

For reversal it is urged that the evidence does not measure up to the standard required for reforming an instrument on account of mutual mistake; that the grantors were guilty of negligence; that the oral agreement was merged in the written deed; that the action is barred by the two-year statute.

The rule seems to be well accepted that in order to justify the reformation of a deed or contract on the ground of mistake, the party seeking reformation must establish by clear and convincing evidence either that the mistake was mutual or that there

was a mistake on the part of one party and fraud or inequitable conduct on the part of the other. National Fidelity Life Ins. Co. v. Gerard, 175 Okla. 219, 52 P.2d 1. Further, in order to justify reformation, the evidence must be full, clear, unequivocal, and convincing as to the mistake and its mutuality. Critchlow v. Bacon, 142 Okla. 168, 285 P. 968; Higgins v. Classen, 176 Okla. 233, 55 P.2d 101.

It is competent to show the conduct, declarations, and statements of the parties just before and at the time of the execution of the instruments. Whittaker v. White, 169 Okla. 336, 37 P.2d 247. Under a sufficient showing of mutual mistake, or mistake on one side and fraud on the other, if by such mistake an estate or interest intended to be conveyed is **enlarged,** curtailed, or vests in a different manner from what the parties intended, the deed will be corrected, and the **omission of a reservation** will be righted. Newbern v. Gould, 162 Okla. 82, 19 P.2d 157.

The Cliftons proved the following facts to the satisfaction of the trial court: J. E. Halbert originally owned the land upon which the buildings are located. He first constructed a building upon the west 30 feet of the lot. Later he built another building on the east 40 feet of the lot, about five feet east of the first building. In this five feet of space the stairway was built, and enclosed, apparently as a part of the building. The stairway finds its support partly in the wall of each building.

When Halbert sold the west building to Dr. Clifton he granted to the doctor a perpetual right to use and enjoy the stairway for the purpose of ingress and egress to the building sold, and also granted the perpetual use of the driveway at the rear of the east building for the purpose of ingress and egress. Later Halbert deeded the east building and premises to Daisy C. Clifton. It was more than seven years later that the deed from her to the loan association was executed. This is a warranty deed.

Mrs. Clifton's evidence is to the effect that in dealing wih the officers of the loan association she told them several times about the easement, and that her conveyance to them should not affect it; that by error of the scrivener in writing said deed the easement was not mentioned; that she owned the property individually and did not expect to have the doctor join in the deed, but that the loan association required her to obtain her husband's signature merely, as its officers stated, because he was her husband and they wanted to bar his homestead rights. The deed was presented to Dr. Clifton, who was busy, and he signed it, as her husband, believing that he was so signing for the purpose of relinquishing homestead and not easement rights. No part of the consideration passed to him. Dr. and Mrs. Clifton were corroborated by the broker who handled the transaction for both Mrs. Clifton and the association.

The association had notice of Dr. Clifton's easement by the record of the Halbert deed and by virtue of the abstract and their attorney's opinion thereon, which called particular attention to the easement. Although the attorney testified that he discussed the easement with one of the officers of the association who was handling the transaction, the testimony of this officer is silent as to any conversation about this matter, or as to any reason why he required the signature of Dr. Clifton to the deed, except he denied that he asked for Dr. Clifton's signature on the question of homestead rights. The opinion of the attorney did not require a conveyance of the easement, but merely called attention to it, and admonished the company to familiarize itself with the easement in order to consider its effect upon the property. The other officer of the association who handled the transaction also failed to mention the attorney's opinion or anything done in reference to the easement. Both officers denied discussing the easement with Mrs. Clifton.

There is evidence that the association closed the deal before obtaining its attorney's opinion; but in the reply and opening statement of counsel it is claimed that the opinion was first and that the deed from the doctor was for the purpose of releasing his easement and other rights, and that this deed was furnished the attorney after his opinion. Certainly the association failed to communicate either to Mrs. Clifton or the doctor that it desired his signature for the purpose of releasing his easement, and the easement is not mentioned in the deed. Surely the ordinary thing for the association to have done, when, as is claimed, it discovered for the first time from its attorney the existence of the easement, would have been to discuss it with Mrs. Clifton, and, if the easement stood in the way, advise her to that effect and as to what should be done to

remedy the defect in the title. Despite their denials of conversations with Mrs. Clifton concerning the easement, it seems to us the attending circumstances and the significant omissions in the testimony of the association's officers tend to corroborate Mrs. Clifton, the doctor, and the broker.

The two representatives of the association testified that they were trading for Mrs. Clifton's property, her two-story building in Norman. According to their story the doctor's name was not mentioned by her or them as a necessary party to the transaction. This, notwithstanding the fact that the association's attorney testified he called the doctor's easement to the association's attention and that one of them brought him the warranty deed signed by the Cliftons and asked if that would take care of the easement. The former secretary denied that he closed the transaction and fixed that duty on another employee who was not produced.

It is inconceivable that if the officials knew of the easement, as they did, either from being told or from the record or abstract, they would have ignored it, unless they intended to take the property burdened with it, or unless, believing the doctor would not relinquish the easement without consideration to him, they conceived the idea of persuading him to sign a deed under the mistaken idea of relinquishing his homestead rights. Since Mrs. Clifton owned the property individually, and they were dealing solely with her, it is not probable that, without suggestion on their part, she obtained the doctor's signature to the deed. It may here be said that the officer who handled the transaction for the association had severed his connection therewith before the trial.

The conclusion, therefore, from the evidence is either that both parties inadvertently or by mistake failed to reserve in the deed the easement to Dr. Clifton, or that the Cliftons were mistaken as to the effect of the deed and there was inequitable conduct, if not fraud, on the part of the association, such as would justify reformation under the decisions. See Whittaker v. White, supra.

The evidence shows that Dr. Clifton continued to use his alleyway easement after he signed the deed and did not have occasion to use the stairway until just before this suit was filed. Laches cannot be imputed. Higgins v. Classen, supra.

Cases are cited to the effect that where one negligently fails to read a deed or written instrument, equity will give him no relief. We do not conceive that rule to be of universal application. The very number of the cases where reformation has been granted refutes the idea that the mere fact that one able to read signs a deed places him in a position to be unable to reform for mutual mistake. In the Higgins and Whittaker Cases, supra, reformation was granted, and the court did not base any part of its opinion in either case upon the theory that the grantors could not read the instruments signed. The context of the cases indicate the parties could read, but were misled by the grantees in much the same fashion as in this case. In Marshall v. Homier, 13 Okla. 264, 74 P. 368, there was involved an omission from a deed of a reservation of growing crops. The court held that the allegations of the petition were sufficient to warrant a reformation; "that the omission (of such reservation) from the deed was a mutual mistake of both plaintiffs and defendant; that the omission being a mistake, **an oversight**, would not constitute negligence on the part of the plaintiffs in error." This case was followed in Teachers' Conservative Investment Ass'n v. England, 115 Okla. 298, 243 P. 137, as was also the case of Davis v. Keeche Oil & Gas Co., 89 Okla. 226, 214 P. 711, cited here. The case of Teachers' Conservative Investment Ass'n v. England refers also to Houchin v. Auracher (Iowa) 190 N. W. 3, which is likewise cited here by plaintiff in error; but, as we construe our decision, this court declined to follow the extreme statement of that Iowa case when we said:

"We do not care to follow the court to the extent of the language employed and cannot commit ourselves to such a rule, realizing that cases might arise where the circumstances under which the false representations were made might call for equitable relief."

The court then announced the general rule as stated in paragraph 4 of the syllabus as to the exercise of the degree of diligence that should be expected from a reasonable person. (See paragraph 3, syllabus here.) A later Iowa case discussed the Houchin Case among others and shows that the statement relied on by plaintiff in error here is not of universal application. That court, in approving previous statements, said:

"The law requires only reasonable

diligence, and requires this to the end that culpable negligence may not be encouraged." * * *

" 'It must be conceded that appellee had full opportunity to examine the deed and to know its contents, but he also had a right to rely, to some extent at least, upon the agreement as to what its terms should be.' * * *

" 'Generally speaking, it can be said that some degree of negligence enters into all cases where a writing, signed by the parties, fails to express their real intention. * * * But even negligence may have its mitigations, and failure to discover is not always inexcusable in equity; and this is especially so as between the original parties to the transaction.' " Conrad v. Farmers Mut. Hail Ins. Ass'n of Iowa (Iowa) 273 N. W. 913, 916.

Other courts have discussed the principle that men in business transactions may deal with each other in the belief that each is honest, and that a prudent man does not need to treat his fellow man as a rascal, so that in not every case is the failure to read a deed culpable negligence.

In Boulden v. Wood (1903) 96 Md. 332, 53 Atl. 911, it was said:

"But it is objected that the mistake was caused by the negligence of the plaintiffs and that therefore they are not entitled to relief. In support of this position it is said that the plaintiffs had an opportunity to read the deed and if they did not read it, it was gross negligence on their part. If this general proposition were correct it would follow that a court of equity never would reform a written instrument at the instance of one of the parties to it; but we know this is not so. Whether the court will or will not correct the mistake must depend upon the circumstances of each case."

In this case we cannot hold that the evidence establishes such negligence as to make it inequitable to reform the deed.

We think, further, that in this class of cases the rule that oral negotiations merge in the written contract does not apply in full force. If so, no parol proof could be adduced. We have, however, adopted the rule that parol evidence is admissible. See Whittaker and Higgins Cases, supra. Furthermore, the defendants are, under said decisions, not barred by laches or the two-year statute of limitations. This suit was commenced by the association. It was only a short time before its commencement that the defendants learned that the association claimed that the easement had been extinguished. No intermediate detriment to the association was shown.

Defendants in error also call attention to the rule as to ways of necessity, citing such cases as Powers v. Heffernan (Ill.) 84 N. E. 661, where the court held that a warranty deed did not pass the easement of a stairway erected between two buildings for the joint use of the second stories of each, where the buildings were sold to separate persons. But in view of what has heretofore been said, we need not discuss the applicability of the law there announced to the facts in this case.

The judgment of the trial court is affirmed.

RILEY, PHELPS, CORN, and HURST, JJ., concur.