Frank FESSLER et al., Plaintiffs in Error,

v.

E. A. FARISS, Defendant in Error.

No. 37104.

Supreme Court of Oklahoma.

Dec. 4, 1956.

As Amended Dec. 31, 1956.

Garrett & Garrett, by Tom W. Garrett, Oklahoma City, for plaintiffs in error.

Tomerlin & High, Oklahoma City, for defendant in error.

HALLEY, Justice.

The mineral interest involved in this action is part of the minerals in and under 168.89 acres in Oklahoma County described as Lots 1 and 2 and the South Half of N.E. Quarter of Section 5–13N–3W. This land was patented to Martin Fessler, Sr. in 1911.

December 19, 1929, Martin Fessler, Sr. and wife conveyed to Frank Buttram a one-half interest in all of the minerals under the entire tract for a period of twenty-five years, or as long as mining operations or production continued. It was agreed that the Frank Buttram term mineral interest expired December 19, 1954 and reverted to the heirs of Martin Fessler, Sr. A part of this mineral interest forms the basis of the controversy in this action.

We find it necessary to outline the family history of Martin Fessler, Sr. and the various transactions occurring after his death in 1933, and prior to the filing of this action by E. A. Fariss to quiet his title to all of the surface of 168.89 acres and 98.3708/168.89ths of the minerals, subject to a certain oil and gas lease.

When Martin Fessler, Sr. died in 1933, his estate was distributed to his heirs by the County Court of Oklahoma County as follows:

To Martin Fessler, Jr., a son, one-third;

To Frank Fessler, a son, one-third;

To the heirs of a deceased daughter Kathryn Trenkle, nee Fessler (referred to as Kathryn 1st), being a 1/12th interest each to Edward Trenkle, Mary Trenkle, Thomas Trenkle and Kathryn Trenkle, 2nd.

On March 9, 1934, Martin Fessler, Jr. and wife conveyed all of his one-third of the surface rights in the 168.89 acres to Frank Fessler, retaining all his mineral interest in the entire tract. July 18, 1934, Martin Fessler, Jr. and wife conveyed to H. B. Sears and L. O. Pulliam a one-sixth interest in the minerals in 168.89 acres, and this interest is not in controversy here.

In a partition action involving the surface rights only, the court awarded to the four Trenkle children a one-fourth interest each in the West 56.29⅔rds acres, and to Frank Fessler all of the remainder of 112.6 acres.

It will be noted that the mineral conveyance of Martin Fessler, Jr. to Sears and Pulliam covered all his interest in the minerals except his one-third reversionary interest in the Frank Buttram mineral interest.

April 12, 1946, Frank Fessler and wife conveyed to E. A. Fariss, by warranty deed, all of his interest in the entire tract of land except the 56.28⅔rds acres owned by the Trenkle heirs. He reserved a 14 acre mineral interest, and on October 25, 1946, he executed a correction warranty deed conveying the same 112.6 acres but reserving 14/168.89 of the minerals and conveying all interest in the minerals that may revert to him from the Frank Buttram mineral interest.

March 6, 1947, Frank Fessler and wife conveyed to E. A. Fariss all of their reversionary interest in the Frank Buttram interest, reciting that it was their intention to convey an undivided one-half interest in the Frank Buttram mineral interest.

Kathryn Trenkle, 2nd, daughter of Kathryn Trenkle, 1st, died in 1940, and left as her sole heir her father, W. H. Trenkle, being an undivided one-fourth interest in the surface of 56.29⅔rds acres, less 23/24th of the minerals, giving to her father a 1/24th interest in the minerals.

Mary Trenkle, daughter of Kathryn Trenkle, 1st, became Mary Cooper and all of the Trenkle heirs will be referred to as the "Trenkles."

When the estate of Kathryn Trenkle, 2nd was administered, the court decreed that W. H. Trenkle, her father, was her sole heir and she was found to own at her death a one-fourth interest in the surface of 56.29⅔rds acres, and an undivided 1/24th interest in the minerals, or ¼th of ⅙th of the minerals under the entire quarter section, and W. H. Trenkle was awarded her entire estate except 3 and ½ acres in the minerals.

October 29, 1946, W. H. Trenkle and wife conveyed by warranty deed to E. A. Fariss all of their surface rights in 56.29⅔rds acres and ¼th of 14/168.89 interest in the minerals, and on the same date executed a warranty deed to E. A. Fariss, as attorney in fact for the other Trenkle heirs, conveying all of the surface rights in the 56.29⅔rds acres and an undivided ¾th of 14/168.89 interest in the minerals in the entire N.E. Quarter above described.

November 12, 1947, W. H. Trenkle and wife conveyed, without warranty, to E. A. Fariss all of his reversionary interest in the Frank Buttram mineral interest in the entire tract of land, expressly stating their intention to convey all of their reversionary interest in the Frank Buttram minerals, and on the same date, as attorney in fact for the other Trenkle heirs, conveyed to E. A. Fariss their reversionary interest in the minerals in the entire quarter section.

January 4, 1955, Frank Fessler made an affidavit to the effect that Martin Fessler, Jr. had died intestate in 1943, leaving no children but leaving as his heirs Amanda Fessler, his wife, Frank Fessler, a brother, and the heirs of his deceased sister, Kathryn Trenkle, 1st, but that no administration was had upon his estate.

When E. A. Fariss filed this action to quiet title on May 2, 1955, he alleged that he owned the fee simple title to 56.29⅔rds acres, less 84.5193/168.89 acres owned by some or all of the defendants and that he also owned 112.59⅓rd acres, less 56.471/168.89 acres of the minerals which were owned by various defendants. He alleged that his interest was subject to an oil and gas lease and prayed that his title be quieted.

W. H. Trenkle and the other heirs of Kathryn Trenkle, 1st, answered by general denial and filed a cross-petition in which they alleged that they owned an interest in the minerals in the land involved; that final decree of the District Court was entered in the estate of Martin Fessler, Sr. in 1933, by which each of the four Trenkle children received a 1/12th interest in the minerals in the land, subject to the interest held by Frank Buttram; that when Kathryn Trenkle 2nd died in 1940, her interest in the surface and minerals became vested in her father, W. H. Trenkle, as her sole heir; that Mary Trenkle, the granddaughter of Martin Fessler, Sr. died in 1953, leaving as her sole heir a daughter, Mary Katherine Cooper, who now owns that part of the estate of her great-grandfather, Martin Fessler, Sr., distributed to Mary Trenkle.

That on October 29, 1946, when W. H. Trenkle conveyed the surface and ¼th of 14/168.89 of the minerals inherited, as above stated, and in 1947, conveyed to E. A. Fariss his reversionary interest in the Frank Buttram minerals; and that the other three Trenkle heirs conveyed to E. A. Fariss the surface and ¾ths of 14/168.89 acres of the minerals, and in 1947, conveyed all their reversionary interest.

They alleged that Martin Fessler, Jr. also inherited a ⅓rd interest in the minerals from his father, which interest passed to him by decree in the estate proceedings of Martin Fessler, Sr., and that when these cross-petitioners conveyed to E. A. Fariss, the heirs of Martin Fessler, Jr. had not been determined and that they did not know whether they would inherit any property from him and did not convey such interests to E. A. Fariss; that they are now advised that they inherited from Martin Fessler, Jr.,

who inherited a ⅓rd interest in the minerals from his father, subject to the Frank Buttram interest, one-half of the 28.14383 acres of minerals that reverted to the heirs of Martin Fessler, Jr. on December 29, 1954. They alleged that W. H. Trenkle owns 3.5371 acres of the minerals and that the other three Trenkle heirs owned 8.2285 acres each of all the minerals, subject to the oil and gas lease to Powell Briscoe and E. F. Briscoe. They prayed for judgment that they own the minerals claimed and that their title be quieted.

The answer and cross-petition of Frank Fessler is similar to that of the Trenkles. He alleges that he inherited a one-third interest in the entire tract of land, subject only to the Frank Buttram interest. That on April 12, 1946, in addition to owning a portion of the surface he owned 28.14383 acres of the minerals and a reversionary interest of ⅓rd in the Frank Buttram minerals, which would revert to him December 19, 1954.

He alleged that prior to April 12, 1946, he had orally agreed to convey his interest in the surface and 14 acres of his mineral interest, which he had inherited from his father, to E. A. Fariss; that through error and mistake of the scrivener, instead of the deed conveying 14 acres of the minerals, it reserved and excepted 14 acres of the minerals; that later he executed a conveyance of the minerals inherited from Martin Fessler, Sr. that Frank Buttram held for twenty-five years, and that the latter conveyance was without consideration and that his real intention was that he convey only the one-third interest inherited from his father; that he also inherited a one-third interest in the minerals from Martin Fessler, Sr., subject only to the Frank Buttram interest; that Martin Fessler, Jr. and wife had conveyed to Sears and Pulliam a ⅙th interest in the minerals, being one-half of the ⅙th interest inherited from his father and not subject to the Frank Buttram interest; ·that the heirs of Martin Fessler, Jr. had not been determined when he conveyed to E. A. Fariss and that he did not know whether he would

inherit from Martin Fessler, Jr. and that such interest was not conveyed or included in the oil and gas lease to Sterling Williams; that he is now advised that he has inherited from Martin Fessler, Jr. a one-half interest in 28.14383 acres of the minerals reverting from the Frank Buttram interest.

Frank Fessler prayed that he be adjudged to be the owner of 28.0741 acres of the minerals under the entire 168.89 acre tract, subject only to the rights of General Hydrocarbons Corporation and Sterling Williams and the lease in favor of the Briscoes, and that his title be quieted.

W. H. Trenkle and the Trenkle heirs pleaded that they had not been advised until January, 1955, of the death of Martin Fessler, Jr. and his wife Amanda or that they had left no will, and that the Trenkle heirs would inherit one-fourth of the minerals reverting to Martin Fessler, Jr. from the Frank Buttram interest.

Plaintiff, E. A. Fariss, replied and alleged that at the time the conveyances were executed Frank Fessler knew that he had inherited a one-sixth interest in the minerals, subject to the Frank Buttram interest and also knew that Martin Fessler, Jr. had died without issue, leaving only his wife and that under the law of succession he inherited an interest in the mineral rights owned by Martin Fessler, Jr. and that the terms of the mineral conveyance of March 6, 1947, conveying all his reversionary interest were not ambiguous and were not procured by mutual mistake.

We find 23 exhibits in the record, including all of the conveyances mentioned, letters, decrees of distribution and partition and affidavit of heirship under Martin Fessler, Jr. Only two witnesses, Frank Fessler and Warren Edwards, testified orally. The notes made by attorney Hoyt, who examined the title for E. A. Fariss are also among the exhibits. The oral testimony and exhibits will be discussed later.

In his findings of fact and conclusions of law the court found that Frank Buttram owned one-half of the minerals in the

entire tract until December 19, 1954; that Frank Fessler owned a ⅙th clear mineral interest inherited from his father, and ¹⁄₂₄th from Martin Fessler, Jr., and that the four Trenkle heirs each owned a ¹⁄₂₄th clear interest, and ¹⁄₂₄th of the Buttram reversionary interest inherited from Martin Fessler, Sr. and ¹⁄₂₂nd reversionary interest inherited from Martin Fessler, Jr., except that W. H. Trenkle took no reversionary interest from Martin Fessler, Jr.; that E. A. Fariss secured all of the surface rights, and acquired from Frank Fessler 14/168.89 interest in the minerals inherited from Martin Fessler, Sr., leaving in Frank Fessler a 14.1483/168.89 mineral interest clear of the Frank Buttram reversionary interest.

Frank Fessler conveyed to E. A. Fariss his ⅙th reversionary interest inherited from Martin Fessler, Sr. E. A. Fariss acquired from the four Trenkle heirs a 14/168.89 acre interest in the minerals, leaving in each of the Trenkle heirs 3.5371/168.89 acre interest clear of the Frank Buttram interest, and they also conveyed to E. A. Fariss all of the Trenkle interest acquired by them by inheritance from Martin Fessler, Sr., but it was not stipulated that the Trenkles intended to convey the reversionary interest inherited from Martin Fessler, Jr.

On the controverted issues the court found (1) that Frank Fessler and wife had conveyed to E. A. Fariss all of the reversionary mineral interest owned by them, whether acquired from Martin Fessler, Sr. or Martin Fessler, Jr.; (2) that the Trenkle heirs have conveyed to E. A. Fariss all their reversionary mineral interest, whether acquired by reversion or inherited from Martin Fessler, Sr. or Martin Fessler, Jr.; (3) that by the deeds mentioned the Trenkles and Frank Fessler had conveyed to E. A. Fariss all of their reversionary interest whether inherited from Martin Fessler, Sr. or Martin Fessler, Jr.; (4) that the Trenkle defendants and their lessees had failed to show by a preponderance of the evidence required by law that their deeds were executed by mutual mistake of fact.

The court concluded (1) that where deeds ambiguously express the intention of the parties, the court may hear parol evidence in construing such deeds; (2) that a party seeking reformation on a mutual mistake of fact must establish by clear and convincing proof that the deed as written expresses a mutual mistake and as written is contrary to the intention of the parties; (3) that under our statutes and decisions a deed conveys all of the interest of grantor except where expressly limited and the intention of the parties is generally determined from the instrument itself; (4) that under our statutes and decisions title to an interest in land owned by a decedent vests in his heirs immediately upon his death, subject to the rights under a will, if any, and control of the County Court and that the interests so inherited are immediately conveyable by the heirs of the deceased.

The court concluded that the issues must be decided in favor of the plaintiff, E. A. Fariss and against the defendants. The decree involves numerous defendants and is necessarily long. We do not find it necessary to set out those portions that involve the interests of numerous defendants not parties to this appeal. It is decreed that E. A. Fariss is the owner in fee, save and except 70.5192/168.89 of the minerals in the entire 168.89 acres, or 98.3708/168.89 acres of the minerals, subject to an oil and gas lease now held by General Hydrocarbons Corporation. That Frank Fessler owns 14.1483/168.89 of the minerals in the land, subject to said oil and gas lease, and that the four Trenkle heirs own 3.5371/168.89 acre interest each in the minerals and that other defendants, not parties to this appeal, own certain interests not necessary to describe.

It was decreed that title in the various defendants named be quieted, and that, except as set out in the decree, the other parties defendant have no title or interest in the land. The Trenkle heirs and Frank

Fessler have appealed and contend that the findings and conclusions of law are contrary to the evidence and the law as to the 14.0742/168.89 interest inherited from Martin Fessler, Jr.

The plaintiffs in error submit a single proposition which is as follows:

"A court of equity will examine all of the evidence and cause to be rendered such judgment as should have been rendered by the trial court. Where the evidence shows that the purchaser did not attempt to purchase and the seller did not intend to convey, such conveyance will be reformed to include only that which was sold."

They point out that this property was purchased by E. A. Fariss in 1946, so that it could be farmed by Warren Edwards, and that neither E. A. Fariss nor his attorneys, Warren Edwards and Fred L. Hoyt, had not thought of purchasing the minerals. Martin Fessler, Sr. had stated that the owner of the surface would get the Frank Buttram reversionary mineral interest when the term thereof expired. Martin Fessler, Sr. and wife executed first a warranty deed to his interest in the land, and later the attorneys for E. A. Fariss prepared mineral deeds for Martin Fessler, Sr. expressly conveying whatever interest he had in the reversionary Frank Buttram mineral interest. It is also pointed out that the reversionary mineral interest held by Martin Fessler, Jr. was not then considered by E. A. Fariss, and no inquiry made as to that interest. The heirs of Martin Fessler, Jr. were not determined until the present action was tried.

Plaintiffs in error assume that E. A. Fariss will rely upon the decision in Barnett v. Douglas, 102 Okl. 85, 226 P. 1035, 39 A.L.R. 188, and contend that a mistake of law and not a mistake of fact was made. In the Barnett case it was said in the third paragraph of the syllabus:

"Where the parties to a deed have full knowledge of the facts upon which the grantor's interest in the land conveyed is based, but are mutually mistaken as to the interest of such grantor in the land, because of an erroneous conclusion as to the law of descent, this constitutes a mistake of law, and, unless accompanied by other circumstances demanding equitable relief, constitutes no ground for reformation of the deed based upon such mistake."

Barnett had inherited the land from his son and thought that he inherited only a one-half interest, and his children the other one-half. The purchaser secured deed from Barnett and all the children when in fact Barnett inherited all the land. Reformation of a deed on a mistake of law was denied.

Appellants say that that ruling is not applicable here because the purchaser here made no attempt to determine the heirs of Martin Fessler, Jr. or to purchase his interest. The notes of the examining attorney did notice that Martin Fessler, Jr. owned one-third of the Frank Buttram reversionary interest.

Appellee points out that in the Barnett case reformation of the deed was denied on two grounds: (1) that while the parties thought Barnett had only a one-half interest, it was intended by all the parties to the deed that grantors convey all of their interest; and (2) reformation for a mistake of law will not be granted in this State, as it is in some states.

In Higgins v. Classen, 176 Okl. 233, 55 P.2d 101, 102, it is said in the first, second and third paragraphs of the syllabus:

"In a purely equitable case, this court will consider the whole record, weigh the evidence, and, where the judgment of the trial court is against the clear weight of the evidence, will render or cause to be rendered such judgment as the trial court should have rendered."

"Where, by mutual mistake of the parties, a deed conveys property not intended by the parties to be conveyed,

a court of equity will reform the deed to make it express the true intent."

"In order to justify a reformation of a deed, the evidence must be full, clear, unequivocal, and convincing as to the mistake and its mutuality. Mere preponderance of the evidence is not enough. The proof must establish the fact to a moral certainty and take the case out of the range of reasonable controversy. Where both the mistake and its mutuality are so established, a court of equity will reform the deed to conform to the intention and real agreement of the parties."

Defendants in error cite Campbell v. Newman, 51 Okl. 121, 151 P. 602, where it is said in the first paragraph of the syllabus:

"A mere mistake of law, not accompanied with other circumstances demanding equitable relief, constitutes no grounds for rescission, cancellation, or reformation of a deed to lands based upon such mistake."

 The rules applicable to a review of the record by this Court in an equitable action are to the effect that findings of fact will not be set aside on appeal unless against the clear weight of the evidence; that to justify reformation for mutual mistake, the evidence must be full, clear and unequivocal as to such mistake and its mutuality and the proof must establish the fact of mistake and its mutuality to a moral certainty, and take the case out of the range of reasonable controversy; and, that a mistake of law, and a mistake by one party, or extrinsic mistake which leads parties to contract or to form intentions which might not be formed, constitutes no basis for reformation of an instrument conforming to such intent or contract.

Williams v. Downing, 185 Okl. 633, 95 P.2d 612, 613, is cited and the rule is announced in the second paragraph of the syllabus:

"In an action of equitable cognizance the presumption is in favor of the finding of the trial court, and it will not be set aside unless the same is against the clear weight of the evidence; and, where the finding of the trial court is general such finding is a finding of each special thing necessary to sustain the general judgment. Noble v. Bodovitz, 175 Okl. 432, 52 P.2d 1046."

In French v. Leachman, Okl., 258 P.2d 1204, 1205, this Court in the body of the opinion states the rules applicable to review where reformation is sought for mutual mistake as follows:

"In such a controversy, this court will consider the entire record, weigh the evidence, and determine whether or not the judgment of the trial court is against the clear weight thereof. Higgins v. Classen, 176 Okl. 233, 55 P.2d 101.

"In so reviewing the record, it is necessary to keep two cardinal principles in mind: (1) That it is the province of the trial court in equity matters to determine the credibility of the witnesses and of the weight and value to be given to their testimony, and due regard must given to the fact that the trial judge was present during the trial and that he saw the witnesses and heard their testimony. * * * (2) That although evidence of mutual mistake must be clear, unmistakable, and convincing in order to justify the reformation, it need not be so certain as to go beyond any possibility of controversy. * * *"

In Curtis v. Albee, 167 N.Y. 360, 60 N.E. 660, it is stated at page 661, relative to actions to reform written agreements rests upon the theory that the parties reached an agreement but in reducing it to writing, through mutual mistake, or mistake on one side and fraud on the other, omitted some provision agreed upon or inserted one not agreed upon. It was said in part that:

"* * * In the absence of fraud, nothing can be put in or taken out by

the court, unless it was the intention of both parties that it should go in or be left out when the agreement was written. The sole office of such an action 'is to correct mistakes by writing out the contract according to the actual agreement.' \* \* \* In the absence of fraud on one side and mistake on the other, reformation is never based upon ignorance, although rescission may be, but upon what the parties agreed to, and then, by the mistake of both, failed to express in the writing. A mere mistake is not enough to support such an action, as it must not only be mutual, but special, for it must relate to something agreed upon, but not written out as agreed upon. \* \* \* "

There is no suggestion of fraud in the matter before us. We have carefully examined the entire record and the oral testimony of Frank Fessler who appears to have thought at first that the Frank Buttram reversionary interest in the minerals would go to the owner of the surface at the time of the reversion of the term mineral interest. But he did not hesitate to execute a conveyance expressly conveying his portion of the reversionary interest, regardless of the source from which he obtained it.

Both Frank Fessler and Warren Edwards testified that the Martin Fessler, Jr. reversionary interest was not discussed prior to 1955. But Frank Fessler admitted that when the last deed was presented to him by Warren Edwards, Edwards told him he would have to have this deed to have the reversionary interest when it expired. He and his wife signed the deed expressly covering the reversionary interest.

At the time Mr. Edwards, who acted as agent for E. A. Fariss, talked with Frank Fessler, Warren Edwards had no knowledge of any outstanding reversionary interest in Martin Fessler, Jr. Frank Fessler and the Trenkles may have had such information, but if so, they never mentioned it to Warren Edwards. They thought their surface rights entitled them to convey all of the reversionary interest, and so advised Warren Edwards.

Frank Fessler admits telling Mr. Edwards that all of the reversionary interest would pass with the land. We think it is clear that Frank Fessler thought he was and intended to convey to E. A. Fariss his entire interest whether inherited from his father, or Martin Fessler, Jr. This applies to the conveyances by the Trenkles. In the Trenkle deeds it is said that they intended to convey the surface to the West 56.29 acres and all mineral rights under all the land except 14 mineral acres. That paragraph is as follows:

"All of my interest in and to the reversionary interest, excepted and reserved to the grantor in that certain mineral deed executed by Martin Fessler to Frank Buttram, dated December 19, 1929, filed for record in the office of the County Clerk of Oklahoma County, Oklahoma on January 18, 1930 and recorded in miscellaneous record No. 106 at page 41 and covering the Northeast Quarter (NE¼) of Section Five (5) Township Thirteen (13) North, Range Three (3) W.I.M."

The deed by W. H. Trenkle as attorney in fact for the other Trenkle heirs contains in substance the same expression of intention.

■ It is fundamental that when one dies, intestate, leaving real property, the title thereto immediately vests in his heirs, subject only to his creditors and administration proceedings, and that they may immediately convey their interest. Martin Fessler, Jr. died intestate in 1943, and apparently no administration proceedings were had or intended.

When Martin Fessler, Jr. died intestate in 1943, he left as his heirs, his wife, Amanda Fessler, who inherited one-half of his estate and the remaining one-half interest was inherited by his brother Frank Fessler and the heirs of his deceased sister,

Kathryn Trenkle, nee Fessler, except that W. H. Trenkle inherited no interest in the reversionary interest of Martin Fessler, Jr.

We must assume that since Martin Fessler, Jr. died in 1943, there was no necessity for administration proceedings, and that when his heirs expressly conveyed in 1947 all of their reversionary interest in the minerals, they intended to and did convey all of their reversionary interest in the absence of any limitation or exception. Upon the question of the right of the heirs of Martin Fessler, Jr. to convey the interest inherited from him see Smyth v. Smyth, 198 Okl. 478, 179 P.2d 920, and Davis v. Morgan, 186 Okl. 30, 95 P.2d 856.

The letter by the Trenkle heirs to E. A. Fariss dated September 6, 1946, clearly indicates that they intended to convey their mineral interest except 14 acres.

The first conveyances by the Fesslers and Trenkles conveyed no part of any reversionary interest whether inherited from Martin Fessler, Sr. or Martin Fessler, Jr. The first deeds failed to mention any reversionary interest and we do not think they evidenced any intention to pass one part of the reversionary interest and to retain another part as contended now.

The testimony of Frank Fessler and Warren Edwards, the written contract between the Trenkles and E. A. Fariss, the correspondence, and the last deeds executed indicate that the grantees intended to receive all of the interest owned by grantors in the reversionary interest.

We have weighed the evidence and given due consideration to all of the facts and circumstances surrounding the various transactions in issue and find that the findings and decree of the trial court is not against the clear weight of the evidence. The proof offered as to mutual mistake of fact falls far short of that required to justify the reformation of a written conveyance in the absence of the slightest evidence of fraud. No claim of fraud is made. The judgment is affirmed.