Horace C. BARNHART, Jr., Trustee in Bankruptcy of the Estate of Derryl Blake Hickman, Plaintiff-Appellant,

v.

Dora M. HICKMAN, Defendant-Appellee.

No. 710-69.

United States Court of Appeals,
Tenth Circuit.

Dec. 30, 1970.

James F. Hill, Johnson City, Tex. (Matthew Kane, Pawhuska, Okl., on the brief), for plaintiff-appellant.

Edward H. Moler, Oklahoma City, Okl. (John A. Claro, Oklahoma City, Okl., and Thomas H. Morford, Alva, Okl., on the brief), for defendant-appellee.

Before HILL and McWILLIAMS, Circuit Judges, and BRATTON, District Judge.

HILL, Circuit Judge.

This lawsuit was instituted in the United States District Court for the Western District of Oklahoma by the trustee in bankruptcy of the estate of Derryl Blake Hickman, against Dora M. Hickman, bankrupt's mother, to fix rights in a two-ninths interest in real property for the benefit of the bank-

rupt's estate. The court below entered summary judgment for Dora Hickman, after which the trustee filed motions for a new trial and a non-jury evidentiary hearing. The requested hearing was conducted at which only Dora Hickman testified. Thereafter, the district court reaffirmed its earlier judgment and denied the plaintiff's prayer in toto. The trustee appeals.

The facts are undisputed. Derryl Hickman was adjudged a bankrupt in the Western District of Texas on his voluntary petition filed February 5, 1968. Prior to the bankruptcy litigation, Claude Hickman, bankrupt's father, died testate. But due to the absence of a residuary clause in the father's will and the fact that the quarter section of land here in question was not disposed of by the will, the property passed under the Oklahoma laws of intestate succession. Under the applicable Oklahoma statutes, Derryl was entitled to a two-ninths interest in the land, which the trustee now claims as an asset of the bankrupt estate.

However, after Dora Hickman was issued Letters Testamentary in her husband's estate from an Oklahoma county court in August, 1966, Derryl and his spouse conveyed all his interest in the subject quarter section to his mother by quitclaim deed. Thereafter, Dora, as executrix of her husband's estate, petitioned for settlement of final account, determination of heirship and distribution, asking *inter alia* that two-ninths of the subject property be distributed to Derryl. The final decree of the Oklahoma county court recited that Derryl Hickman was entitled to and did take a two-ninths interest in the land passing by intestacy.

In an attempt to secure title to the subject two-ninths interest, the trustee asserts a tripartite argument. First, it is contended that the probate court decree is a conclusive determination of the heirs of Claude Hickman, so that the bankrupt is the legal owner of the two-ninths interest by virtue of the probate decree, notwithstanding the quitclaim deed. Second, trustee argues that the quitclaim deed was of no effect because the grantor did not have absolute title to the property at the time of deed execution, and that Dora should be estopped to claim title to the interest since she requested that the two-ninths interest be distributed to Derryl. And third, appellant argues that the deed was not supported by adequate consideration.

■ The opening contention seeks to sustain the theory that since the determination of heirship and distribution in the county court was within that court's jurisdiction, the decree was a final determination of title to the subject property. Hence, the issue of title and the effect of the quitclaim deed are res judicata as to the parties, and a judgment to the contrary is in effect no more than an unacceptable collateral attack on the decree.

To support the proposition, appellant cites Ledbetter v. Taylor, 359 F.2d 760 (10th Cir. 1966), which held that the county courts of Oklahoma are vested with exclusive jurisdiction to determine, as an incident of probate, the validity of instruments of conveyance made by an heir. The application of the Ledbetter rationale to the instant suit is somewhat of an anomalous argument for appellant to make. For if the county courts do have exclusive jurisdiction in the instant case, we are without jurisdiction to hear trustee's argument in the suit he instituted. As Ledbetter said: "If, under Oklahoma law, such jurisdiction does lie exclusively in the state county court and is thus denied to the courts of general jurisdiction in Oklahoma (district courts), federal diversity jurisdiction is lacking * * *."

We conclude, however, that there is jurisdiction to decide the merits of this controversy. On close scrutiny there is a real distinction between cases such as Ledbetter and the one at bar—a refinement also recognized by the Oklahoma Supreme Court. Ledbetter dealt with a case in which one party sought to de-

clare void an assignment of real property to another party, while it was in the process of probate in the Oklahoma county court. Jurisdiction was denied there because the Oklahoma Supreme Court had enunciated on numerous occasions that during the process of administration of an estate by the county court, prior to the determination of heirship and decree of distribution therein, the jurisdiction of that court is exclusive.[1] However, we have not been referred to a single case, nor has our independent research uncovered any, which would deny the Oklahoma state district court jurisdiction to decide the merits of the instant suit under its facts. Indeed, quite the contrary is true.

Here the validity or effect of the quitclaim deed was never made an issue in the probate proceedings, and it was not until a year after the final decree by the county court that the instant controversy was commenced. These facts square with those of Odle v. Baskins, 190 Okl. 664, 126 P.2d 276 (1942), wherein two legatees of a will quitclaimed their shares to another, prior to distribution according to the will. Thereafter, the two legatees sought to recover the deeded interests from the grantee. The legatees asserted that the county court decree was res judicata as to their deeded interest and that the grantee could claim no title under the quitclaim deeds. The trial court concluded as a matter of law that the final decree was a conclusive and binding determination as to who were the heirs of the deceased and in whom the interests vested.

The grantee argued on appeal that the quitclaim deeds passed to her all the title of the grantors and the county court decree did not divest her of that interest. The court stated:

Defendant's [appellant's] contention is correct. A devisee may convey the property prior to distribution by the county court. * * * And on final distribution the court should assign to the grantee the interest so conveyed. * * * But the failure of the court to so assign the interest will not adversely affect the grantee's title. The county court has jurisdiction to conclusively determine the heirs of a decedent, but is without power to determine the legal effect of their conveyances of property of the estate. The decree of the county court on distribution does not create a title in the distributee. * * * We have heretofore stated with approval the California rule that the decree of the probate court distributing lands of a decedent is conclusive only as to rights of heirs, legatees or devisees in so far as they claim in such capacity, merely determining succession to such title as the decedent may have had. * * * The rule we apply here is * * * as follows: "Decree of distribution does not determine title between legatee whose right has vested and his grantee."

That Odle v. Baskins, supra, was concerned with property passing under a will, rather than by intestate succession, is of no moment. Directing its attention to this very issue, the Oklahoma Supreme Court said in Hitt v. Hitt, 258 P. 2d 599, 603 (Okla.1953): "In reversing the trial court's judgment [in Odle v. Baskins] we pointed out that a devisee may convey property prior to final distribution by the probate court, and upon distribution the court should assign to such grantee the interest previously conveyed. But the failure to assign such interest does not adversely affect the grantee's title. * * * The rule so announced would apply with equal force in instances where one takes under the laws of intestacy."

Appellant's attempt to distinguish these two cases suffers from inconsist-

1. *See* Blue v. Murray, 260 P.2d 1069 (Okla.1953); State ex rel. Cavett v. Douglass, 187 Okl. 272, 102 P.2d 856 (1940); Taliaferro v. Reirdon, 186 Okl. 601, 99 P.2d 520 (1940); Dillard v. Franklin, 177 Okl. 34, 57 P.2d 629 (1936).

ent analysis. Likewise, the force of the Baskins and Hitt cases is not diminished by the holding of In re Griffin's Estate, 199 Okl. 676, 189 P.2d 933 (1947). The latter case concerned a different issue, *i.e.*, whether the heirs of a spouse first dying take as that person's heirs or as heirs of the surviving spouse. Neither the facts nor the legal issue of that case coalesce with Baskins or Hitt.

It is clear that the district court's decision in this case was correct. The right of the bankrupt to an interest in the property in question vested upon Claude Hickman's death, subject to confirmation by the probate court. When the bankrupt quitclaimed his interest in the quarter section to Dora Hickman, the interest was legally conveyed and the failure of the county court to recognize that conveyance did not divest the mother of the interest. Moreover, appellee makes no attempt to collaterally attack the probate decree. The county court merely determined succession to title in the intestate property; the decree did not create title in the bankrupt. Thus, appellee's assertion that she has legal title to the two-ninths interest in no way impinges on the vitality of the determination of succession set forth in the probate decree. Odle v. Baskins, supra.

■ The argument that appellee ought to be estopped from denying the validity of the probate decree is novel but not persuasive. Wolfe v. Graham, 185 Okl. 318, 90 P.2d 1067 (1938), relied upon by appellant, is not in point because here Dora Hickman is not attempting to deny the efficacy of the probate proceedings. The entire concept hinges on an understanding of the principle that the probate courts of Oklahoma did not have authority to create title in the distributees. With that understanding, and observing that the ordinary elements of estoppel are absent, we are at a loss to see how appellee is estopped.

■ Appellant's second contention is that title to the two-ninths interest did not vest in the bankrupt until the final property decree; that at the time of the quitclaim deed execution Derryl Hickman had no interest to convey. This argument runs directly against the grain of well settled Oklahoma law. "It is fundamental that when one dies, intestate, leaving real property, the title thereto immediately vests in his heirs, subject only to his creditors and administration proceedings, and that they may immediately convey their interest." Fessler v. Fariss, 304 P.2d 332, 340 (Okl.1956). That statement amply disposes of the argument.

■ Last, the trustee contends that the quitclaim deed was void for want of adequate consideration. The reasoning recites that since bankrupt's brother and sister received considerable property under the will and bankrupt received nothing, the several advancements made by the parents to the bankrupt should be considered as his portion of the estate passing under the will. Therefore, the advancements cannot be consideration for the quitclaim deed conveying the property here involved since this property passed under the laws of intestacy, not under the will. Again, although the argument is novel, it is not persuasive.

In the non-jury evidentiary hearing conducted by the trial judge, appellee testified that although she paid neither cash nor other property as consideration for the deeded interest, fair and valuable consideration existed in the form of advancements made to Derryl by both parents. The advancements, she stated, were made prior to Claude's death and were valued in excess of $12,000.

It is evident that both the parents considered the advancements to be Derryl's share of the parents' estate. This is reflected in the non-jury evidentiary hearing by the mother's testimony and in the provisions of the father's will.[2]

---

2. "I have failed to provide for my son Darrell [*sic*] B. Hickman, not from lack of love or affection but because of previous advancements that I have made to him."

And the execution of the quitclaim deed manifests Derryl Hickman's understanding that the advancements were in lieu of his taking any portion of his father's estate. On the entire record before the trial court we cannot find error in the determination that the quitclaim deed was supported by fair and valuable consideration.

Affirmed.